(35 Misc. Rep. 668.)

NEW YORK CARBONIC ACID GAS CO. v. GEYSER NATURAL CARBONIC ACID GAS CO.

(Supreme Court, Special Term, Saratoga County. August, 1901.)

1. EASEMENT—RIGHT OF WAY—EVIDENCE.

    In 1889 certain land was conveyed to the grantor of plaintiff, which land was surrounded by that of said grantor and others. From a spring on the land conveyed, plaintiff obtained gas, which he collected and sold to the trade. The original grantor subsequently conveyed to plaintiff's grantor a right of way over "the space between said lands, the bridge, and broken road, to and over the said road" to a certain avenue. The bridge and the broken road were on the grantor's land, and the avenue ran past the works of plaintiff. The broken road had been used by various grantees of the original grantor to pass from their lots to said avenue. The original grantor, in conveying adjacent lands, declared them subject to a right of way over the broken road to and over the

lands he had conveyed in 1889. *Held*, that plaintiff was entitled to a right of way over the space and the broken road as well as over that road, though the lands now belonging to plaintiff were in 1889 surrounded in part by the lands of plaintiff's grantor, and in part by those of a third person.

2. SAME—LOCATION.

Where the grantor of a right of way had not located it, the court will do so, where the grantee had not located it effectively.

3. SAME.

In locating a right of way over surrounding lands to a public road, plaintiff must proceed in a reasonably direct way, and must go around improvements located before plaintiff claimed the present location of its right of way.

4. SAME—USE OF EASEMENT.

Where plaintiff has acquired a right of way to certain lands upon which a spring was located, it had a right to lay a pipe for conducting gas from such spring on the whole right of way on the surface, or sink it below the frost line.

Action by the New York Carbonic Acid Gas Company against the Geyser Natural Carbonic Acid Gas Company to establish a right of way and for an injunction.  Judgment for plaintiff.

Edgar T. Brackett, for plaintiff.

James W. Verbeck, for defendant.

RUSSELL, J.  The subject of this controversy is the right claimed by plaintiff to transport liquid carbonic acid gas from its own mineral springs, in the town of Saratoga Springs, over the defendant's adjacent lands, to a point of access to plaintiff's additional lands, on which it has erected valuable works for the compression of fluid gas into liquid form for commercial purposes.  The privilege is a valuable one; the defendant asking the plaintiff $600 per year for its use at the present time, and denying that the plaintiff has any right to such use, however much or little that use may interfere with the defendant's enjoyment of its own property.  The parties are competitors in business, and defendant has the right to refuse to allow ex gratia even that which cannot seriously interfere with its own business, provided the plaintiff has not a just claim to an easement from necessity, reservation, or grant.  The parties take title from a common source.  October 12, 1889, Eugene Wiswall conveyed about three acres to Emily and Frank Hathorn, near the spot known as the "Geysers," in Saratoga Springs; and on the 1st day of April, 1896, also conveyed to them, after reciting that it was the intention of Wiswall at the time of the conveyance in 1889 to grant the right hereafter described, an easement characterized in the following words:

"The said right of way from said lands described in said deed to them over the space between said lands, the bridge, and broken road, to and over said road to said Coesa avenue."

On the 6th day of June, 1896, Emily and Frank Hathorn conveyed to the plaintiff the lands previously granted to them by Wiswall. Thus, whatever title and appurtenances Wiswall conveyed to the Hathorns in 1889 and whatever reserved interest he conveyed to them April 1, 1896, the plaintiff now possesses, undiminished by any

conveyances from Wiswall to other persons subsequent to his origi-
nal deed to the Hathorns. The interest of the defendant in its lands
adjacent to those of plaintiff comes through a conveyance by Wis-
wall to Lyman F. Pettee and others made on the 7th day of January,
1893, following a contract of purchase between the same parties
executed April 28, 1892. In that deed to Pettee the grantor incor-
porated this provision:

"Subject also to a right of way to Emily H. and Frank H. Hathorn, their
heirs and assigns, over the broken road as it now exists to and from the
lands conveyed to them by said Wiswall by deed dated October 12, 1889,
and recorded October 22, 1889, in Book No. 186, page 456."

On the 1st day of March, 1895, Pettee and others conveyed to the
defendant the lands which Wiswall had deeded to them; this con-
veyance being prior to the grant from Wiswall to the Hathorns of
the right of way. The reservation, however, contained in the deed
to Pettee and others was in a recorded deed, of which the defendant
had presumptive notice.

The broken road referred to had been used from Coesa creek
to Coesa avenue, which avenue partly bounds the easterly and dis-
tant part of the plaintiff's lands, called the "Hurlburt Lands," on
which are erected the plaintiff's tank and compressing works. It
had been used to some extent by the owners of the Wiswall lands
for communication between their lots and Coesa avenue. The
whole Wiswall tract was not very valuable at the time of his owner-
ship, but the region was recognized as a spot in which mineral
springs might be discovered; several near by being already known
and made useful. There was, therefore, at the time Wiswall con-
veyed to the Hathorns, who were interested in mineral springs at
Saratoga Springs, the possibility of future discoveries by explora-
tion, the anticipation of which was justified by the discovery which
plaintiff made, after it acquired the ownership of the Hathorn three
acres, of a new spring largely productive of the carbonic acid gas
used to make mineral waters sparkling and attractive. That spring
spouts some 35 cylinders of gas per day, and its transportation to
the plaintiff's works on the Hurlburt tract does not require the use
of vehicles or the carriage of the water in liquid form; for it is sepa-
rated at the mouth of the spring from the water, and may be carried
through pipes, as a fluid, to the compresser, where it is turned into
liquid. At the time of the Wiswall deed to the Hathorns the lands
of other parties adjoined the Hathorn lot, but no right or possible
power over them existed in Wiswall or his grantees. There was a
necessity for the use of the broken road in the enjoyment of the
Hathorn tract conveyed by Wiswall. That broken road lay on the
lands of the grantor, Wiswall, and no denial of the privilege or right
to use it appears in the case, so that presumptively during Wiswall's
tenure of the lands now owned by the defendant the Hathorns had
free access to and over the broken road to Coesa avenue. As
against Wiswall, therefore, the appurtenant right of passage by the
Hathorns existed in their favor, and his acquiescence contempo-
raneously with his ownership forms a part of the res gestæ in
determining the assumed rights of the plaintiff at a time when no con-

troversy existed.  That right of the Hathorns was further distinctly recognized by Wiswall in his deed to Pettee and others, who are the grantors of the defendant, by its reservation of the right of way to the Hathorns, and by his subsequent conveyance to them of all the rights which he had preserved by the deed in which he parted with his title to the defendant's lands.  The appurtenant right of way which arises by necessity is not defeated by the fact that the land conveyed is surrounded in part by that of the grantor and in part by that of a third person.  Palmer v. Palmer, 150 N. Y. 135, 44 N. E. 966, 55 Am. St. Rep. 653.  It was the duty of Wiswall, in conveying his remaining land to other persons, to recognize the obligations to other grantees; and therefore his reservation in the deed to Pettee was not for his own personal benefit, but, from the underlying situation and his own expressed language, was for the protection of those prior grantees, and in recognition of his own duty. This distinction is recognized by our courts.  Society v. Brennan, 148 N. Y. 661, 43 N. E. 173; Lattimer v. Livermore, 72 N. Y. 174; Hay v. Knauth, 36 App. Div. 612, 55 N. Y. Supp. 680.  When so intended, the reservation is an exception from the thing granted, of which an adverse grantee must take notice.  Iron Co. v. Reymert, 45 N. Y. 703.  The situation of the Hathorn lot, the conveyance to the Hathorns, the reservation in the deed to Pettee, the conveyance of the reserved right which Wiswall had, and the use of the broken road, therefore, give the plaintiff's lot the dominant appurtenant right of way, and make the defendant's tract the servient tenement. The owners of the title to either tracts have never definitely located the easement.  The grantor undoubtedly had the right to locate, fairly exercising that right, and in case of his neglect or refusal the grantee had also such a privilege.  Palmer v. Palmer, 150 N. Y. 139, 44 N. E. 966, 55 Am. St. Rep. 653.  That choice has not effectively been made by either side.  It remains, therefore, for the court to consider, from the terms of the reservation, and the situation upon which that reservation was based, what should be the location.  Such power exists in a court of equity.  Trustees v. Lynch, 70 N. Y. 440, 26 Am. Rep. 615.  The use must be with due regard to the interests of the defendant, and with as little disturbance to the enjoyment of its property as may be practicable.  Such use, however, must be of substantial utility.  The right to pass over the broken road would be a mockery if the plaintiff could not reach the broken road without a trespass upon the defendant's lands. Hence the need of passage to the broken road for any possible enjoyment of the easement.  The plaintiff must proceed in a reasonably direct route across the defendant's lands to this broken road, and along the same to such point as may be near its own works upon the lands owned by it, without again entering from that broken road upon the defendant's lands.  I do not think it necessary to remove the addition to the gristmill which was constructed before the plaintiff sought the location it now claims.  It is practicable to go westerly around the building.

It is strongly urged by the defendant's counsel that the privilege of passage means purely a passage over the lands and broken road,

and does not extend to the laying of pipes within the protection of the soil. It would seem that a two-inch pipe, placed out of sight, would not in the slightest degree vex or disturb the defendant in the use it makes of its own land, and that an occupation by horses and drags with heavy loads would be to the defendant a matter of more serious disturbance. But I cannot agree with the position taken by the defendant in this respect. The right of passage to transport commodities is a right which is adapted to a reasonable use under the varying conditions of business life, and is not measured by the exact form of the transporting vehicle, or the number of times it is used. Such an easement is a grant of practical benefit so far as is consistent with the purpose of the thing granted, and not destructive to the rights of the owner of the servient tenement. Arnold v. Fee, 148 N. Y. 214, 42 N. E. 588; Id., 87 Hun, 502, 34 N. Y. Supp. 1028; Beals v. Stewart, 6 Lans. 408. The plaintiff would have a right to lay the pipe upon the surface of the ground to the broken road, and then along that road, and, as the right over the defendant's lands arises from necessary implication to reach the broken road, a reasonable application of that necessity would give the plaintiff the power to bury the pipe as far as the broken road; and I also hold that the passage over the broken road does not merely refer to the surface under the circumstances as they exist, but may extend to the removal of an obstruction to the passage of other parties by laying it beneath the ground and out of sight,—even below the frost line. That a varying use, exercised with all reason and adapted to current exigencies, flows from an easement, is held by courts of other states. "As usually occupied" follows the future common usage. Sargent v. Hubbard, 102 Mass. 380. The necessities of the future determine the use, and not that use in vogue at the time of the grant. Whittier v. Winkley, 62 N. H. 338. Stone from a discovered quarry may be transported, though the land was used for agricultural purposes at the time the easement was granted. Abbott v. Butler, 59 N. H. 317. Kindred cases are reported as cited below. Holt v. Sargent, 15 Gray, 97; Walker v. Pierce, 38 Vt. 94; Gunson v. Healy, 100 Pa. 42; Johnson v. Kinnicutt, 2 Cush. 153. Even the right to build a railway may be implied. Dand v. Kingscote, 6 Mees. & W. 174. I do not think that the terms of the reservation in conveyances by Wiswall to persons not parties to this litigation affect the rights of either, nor that the terms of the contract to Pettee in 1892, that the lands were to be subject to the reservations contained in deeds, limit the plaintiff's right. Pettee did actually take a deed in 1893 with a reservation to the Hathorns, as therein expressed, with no apparent protest; and the circumstances indicate that the grant to the Hathorns of the easement, as recognized in the Pettee deed by the reservation, was overlooked by the parties at the time the Hathorn deed was given. Upon an appeal from an order for a temporary injunction in this case, the appellate division granted a reversal, holding that it was premature to determine the practical location of the easement, even if the right existed, and the opinion makes some pertinent suggestions as to questions arising upon the general controversy. New York Carbonic Acid

Gas Co. v. Geyser Natural Carbonic Acid Gas Co., 55 App. Div. 128, 67 N. Y. Supp. 439. I infer that the interlocutory question was decided by the appellate division upon the papers presented upon the motion in the usual manner, with no rebutting evidence explanatory of matters stated in the defendant's answer and affidavits or map. The testimony and exhibits now produced upon the trial show a more variant and enlarged view of the entire situation.

Judgment is directed in favor of the plaintiff, allowing the laying of the pipe as indicated, and enjoining interference therewith, and for costs of the action. The court does not determine any question not before it, and therefore awards this judgment, without the expression of any conclusion as to whether the location to be established for the purpose indicated is exclusive of any other privilege of passage for vehicles or otherwise in the future. Judgment accordingly.