Pollock, J.
This action comes into this court on appeal, and was submitted on the pleadings, testimony and argument of counsel.
In 1899 plaintiff owned a tract of land lying between the Fairport public road and Lake Erie, in Painesville township, Lake county, and east of the village of Fairport. Some time during that year the plaintiff platted this land into lots and tracts of land, making a private way forty feet wide, extending from the Fairport road to Lake Erie, through the center of this tract, and some side ways intersecting this main way. This plat was recorded in the recorder’s office of Lake county. Lot or tract number nineteen was on the east , side of this center way, and lot or tract number eighteen was on the west side. The company, after this allotment was made, sold the lots therein by a deed containing a condition regarding the use of this private way, which will be referred to hereafter, retaining in itself the legal title to this way. The Fairport, Painesville & Eastern Railroad Company, some time prior to the commencement of these proceedings, became the owner of lot number nineteen, and also of a strip of land extending along the north side of lot number eighteen to this center right of way, and obtained from the plaintiff a grant to build and operate its railway over this center right of way.
The Diamond Alkali Company, defendant in error, was for some time prior to the commencement of these proceedings engaged in the manufacture of alkali products, its plant being situated, on the west side of this allotment. It obtains its product by drilling deep wells down to the salt or *75 alkali mineral, and water is conveyed to these wells and forced down into them for the purpose of making* a brine of the alkali mineral or salt, and that is pumped out of the wells and transported in pipe lines to its plant and manufactured into alkali products.
Prior to the bringing of this action the alkali company had obtained a lease or a conveyance from the defendant railroad company of lot number nineteen for the purpose of drilling and producing alkali salt from wells which it intended to open on this lot, and was proceeding to lay a pipe line through the strip of ground acquired by the railroad company along the north side of lot number eighteen and across this center way, the legal title to which was retained by the realty company, to wells which it drilled on lot number nineteen, and also to lay a pipe line from the wells across this same center way to its alkali plant on the west side of this allotment. It was intending to lay these pipes in trenches below the surface across this center way. This action was brought to enjoin the alkali company from laying its pipes across this strip of land.
The Diamond Alkali Company admits its intention of laying the pipe lines as alleged in the petition, but claims it has a right to do so under the deed made to its predecessor in title by the plaintiff in this action. All the subsequent conveyances from that time down to the conveyance to the railroad company contained like conditions in regard to the use of this center private right of way.
At the time this allotment was made by the plaintiff the . purpose was supposed to.be, or the *76 object intended at that time was, to make or develop a summer resort. The supposition was that .the lots would be built on for residences, either per-, manent or summer residences for the owners themselves, or for boarding and rooming houses for the people who might visit there during the summer season. It also appears that since this alkali product was discovered on this property and in the adjoining neighborhood the property has ceased to be used ás a summer resort. The condition in the deed of the plaintiff in regard to this center private way extending from the Fairport road to Lake Erie reads as follows:
“To have and to hold the same, together with all appurtenances, privileges and easements hereinafter mentioned, forever, and the said grantor, in consideration of the premises and the mutual covenants herein mentioned, does hereby give and grant unto the said grantee, his heirs and assigns, a perpetual right to use and enjoy, but in common, notwithstanding, with the owners of the residue of said allotment, so much of the bank and beach bordering on the lake described on plat of said allotment as Reserve ‘B’ as lies east of the west line of the north and south center road extended to the lake, together with the use of the private ways and drives in said plat described as lies east of the west line of said north and south center road, reference to which is hereby made; said reserve, ways, and drives to be used for the pleasure, recreation, amusement, health and travel of the owners of said-allotment and for no other purposes.”
This strip of ground, under the above conditions, .was. to be used by the owners of the several lots for *77 pleasure, recreation, amusement, health and travel, and for no other purpose. The present owners of the lot could convey to the alkali company no greater right to use this center way than it possessed by reason of this condition. It is claimed on the part of the alkali company, but strenuously denied by the plaintiff, that this condition gives to the company the right to transport water across this private way on this lot for the purpose of producing this alkali salt and to transfer the salt brine off of this lot by means of pipes under the ground.
This provision in the deed, taking into consideration what the parties evidently had in their minds at the time this allotment was made and these deeds given, gave to the owner of the lot the right to use this private way as ingress and egress to his property. Every use of this private way as a means of ingress and egress, to the full and free enjoyment of the lot sold, passed to the grantees of the several lots conveyed by the deeds containing the condition referred to. It is true that all the words characterizing the use of this lot were indicative of a pleasure resort, except the last two, which provide for health and travel, but the last word, “travel,” if the others do not convey that meaning, clearly shows the intention of the parties to the several deeds that the way was intended as a means of ingress and egress to the property for its full enjoyment. This especially appears when we consider that this way, and the other crossways which were subject to the same conditions, were the only means of ingress and egress to these lots. This deed gave to the owners of the lots the right to use this way to carry off whatever products *78 might be raised or produced on the lots, whether they were products which the parties had in mind when they contracted, or products the result of new uses to which the lots had been subjected. They would have a right also to transport over this right of way whatever might be needed either for the owner’s enjoyment while on the lot, or for use in producing whatever he might desire to produce on his property. When a party grants rights over his property for ingress and egress to the property of another, he not only contracts with reference to the then use but to any future use that the owner of the dominant estate may deem profitable or desirable. This is referred to in the case of Arnold et al. v. Fee et al., 42 N. E. Rep., 588 (148 N. Y., 214), as follows:
“A deed to a lot bounded on an alley recited, after the description of the premises, that the conveyance was 'with the privilege of the main alley leading to the “Palace Stables,” so called, as an easement for ingress and egress along the north line or alley line on the premises hereby deeded, for the distance of 98 feet west from Franklin street, and no more, and for no other purpose.’ Held, that the right of way was for ingress and egress necessary for any business which the grantee might conduct on the premises, and was not extinguished by the change in the use of the premises.”
So that the parties owning lot number nineteen had a right to use this right of way to carry away from said lot anything produced thereon, whether such products were in the minds of the parties at the time of the conveyance or not, and they have the right in the ordinary way to carry on to the *79 lot over said way whatever might be necessary for the enjoyment or business which the owner might be conducting thereon. Such grants are not made for present use alone, but involve modern discoveries and development in the world’s progress. Years past, when we were using horse-drawn vehicles, rights of way were granted by one party to another across his property. The parties had in mind at that time that such use would be made of the way granted, but since that time automobiles and motor trucks have come into use and there is no question that the owner of the dominant estate has a right to travel over these ways’with this new means of transportation.
It is claimed that because the alkali company is intending to take, through pipe lines laid across this strip, necessary water to mine the mineral that has been discovered since the conveyance of this property by the plaintiff, and then take this mined mineral through pipe lines across this strip of ground, it is exceeding the use conveyed by plaintiff to its predecessor in title, under the provision referred to. We think that the provision referred to did give the owner of the lot the right to mine and transport this mineral across this strip, in the ordinary way such mineral products are mined and transported. It is not claimed the way that the alkali company proposes to use this strip would interfere with any use which the plaintiff is now making of this strip, or any use that it could make under the conditions in the deed conveying the lot; neither is it claimed it will interfere with any rights that the adjoining lot owners may have in this *80 strip. All the plaintiff claims is that such use is an invasion of its legal right in the strip.
The proof shows that this is the usual and only-practical way of mining and transporting this mineral to the alkali plant.
The New York court of appeals, in the case of Marvin v. Brewster Iron Mining Co., 55 N. Y., 538, said in the opinion, at page 551:
“The necessity which is to govern is not fixed and unvarying. The right may be exercised in a manner suitable to the business to be carried on. Such is the principle of the decision in the analogous case of Gayford v. Moffatt, (Law Rep. [4 Ch. App.], 133), where it is held that a lessee of an inner close, becomes entitled to a right of way through an outer close, and that the way afforded to him, must be suitable to the business to be carried on by him, on the premises demised. And what is, perhaps, but an expansion of the last proposition, the exercise of the right is not to be confined to the modes in vogue when it was first acquired. The owner of the mine may keep pace with the progress of invention and ingenuity, so far as is necessary to a profitable working of his property in competition with rivals.”
No doubt when this deed was made by the plaintiff neither of the parties thereto thought that such a product would ever be found on this property, or such a use would be made of this right of way, but it is a discovery of a new value of the lot which requires a new way of developing and transporting the product.
The case of the New York Carbonic Acid Gas Co. v. Geyser Natural Carbonic Acid Gas Co., 72 *81 N. Y. Supp., 354, contains an issue somewhat similar. The plaintiff had a right of way over the defendant’s premises, and he was seeking to transport by pipe line some kind of mineral water to a plant on his property across this right of way for the purpose of marketing this mineral water. The court there held:
“Where plaintiff has acquired a right of way to certain lands upon which a spring was located, it had a right to lay a pipe for conducting gas from such spring on the whole right of way on the surface, or sink it below the frost line.”
In the opinion, on page 357, the court refers to the right to use such a way by laying pipes thereon as follows:
“It is strongly urged by the defendant’s counsel . that the privilege of passage means purely a passage over the lands and broken road, and does not extend to the laying of pipes within the protection of the soil. It would seem that a two-inch pipe, placed out of sight, would not in the slightest degree vex or disturb the defendant in the use it makes of its own land, and that an occupation by horses and drags with heavy loads would be to the defendant a matter of more serious disturbance. But I can not agree with the position taken by the defendant in this respect. The right of passage to transport commodities is a right which’ is adapted to a reasonable use under the varying conditions of business life, and is not measured by the exact form of the transporting vehicle, or the number of times it is used. Such an easement is a grant of practical benefit so far as is consistent with the purpose of *82 the thing granted, and not destructive to the rights of the owner of the servient tenement.”
The supreme court of Alabama, in the case of Williams v. Gibson, 84 Ala., 228 (4 So. Rep., 350), in speaking of the rights of a mine owner against the owner of the overburden or superstructure, say at page 234:
“But he is not limited, as we have already said, to such appliances as were in existence when the grant was made, but may keep pace with the progress of society and of modern invention.”
We think the principle is universally applied to such grants of ways over one’s property that the contract is made with a view of future developments and discoveries upon the property conveyed, and that the party has a right to use the way granted as may be necessary for the new use to which he has subjected his property. We think the alkali company has a right to use this private way as intended by it, and plaintiff’s petition will be dismissed.

Petition dismissed.

Metcalfe, P. ]., and Farr, J., concur.