**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3273
_____

UNITED STATES OF AMERICA

v.

DENVER SANGSTER,
                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:16-cr-00205-1)
District Judge: Hon. David S. Cercone
_____

Before:   GREENAWAY, JR., SHWARTZ, and FUENTES, *Circuit Judges*

(Filed: July 15, 2021)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)

on December 16, 2020

_____

OPINION[*]
_____

FUENTES, *Circuit Judge*.

Denver Sangster appeals his convictions for possession of narcotics with intent to

distribute and possession of firearms in furtherance of drug trafficking.  He argues that the

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

District Court erred in denying his motion to suppress evidence seized pursuant to a search warrant and improperly restricted his attorney's summation at trial. We will affirm.

## I.

The charges against Sangster arose from a confidential informant's tips. In February 2016, City of Pittsburgh Bureau of Police Detective William Churilla met with an informant who claimed Sangster was having large amounts of marijuana and cocaine shipped to Pittsburgh. The informant claimed Sangster intended to distribute those drugs around the city, gave Detective Churilla two of Sangster's cell phone numbers, and identified Sangster's vehicle, a black GMC Envoy. He also gave the detective the address Sangster ran his operation from, a residence belonging to his girlfriend.

The informant met with Detective Churilla again the next month. He claimed Sangster had moved his drug operation to a different address, a house located in Penn Hills, near Pittsburgh. The informant had been to this house and had seen handguns and an assault rifle there. Detective Churilla drove past this house on March 26, 2016, and saw Sangster's vehicle in the driveway. Approximately two days later, the informant claimed Sangster had a large quantity of marijuana and cocaine at the same address.

Based on this information, on March 30, 2016, Detective Churilla applied for a warrant to search the Penn Hills home. A Pennsylvania Court of Common Pleas judge issued the warrant, and the Pittsburgh Police executed it the same day. Officers recovered two handguns and one assault rifle from Sangster's home, and a third handgun from his car. They also found 19 gallon-sized bags of marijuana, 14 bags of crack cocaine and 6 bags of powder cocaine. In total, police recovered more than nine kilograms of marijuana, 154

grams of powder cocaine, and more than 348 grams of crack cocaine. A grand jury indicted Sangster on charges of possession of 280 grams or more of cocaine, cocaine base (also known as crack cocaine), and marijuana, and the unlawful possession of firearms in furtherance of a drug trafficking offense.[1]

Sangster moved to suppress all the drugs and firearms as the fruits of an unlawful search. He argued the search violated the Fourth Amendment because Detective Churilla's affidavit in support of the warrant failed to establish probable cause. The District Court denied the motion, concluding both that the warrant affidavit established probable cause, and that the officers acted in good faith by relying on it.

Sangster's first trial ended with a hung jury. At his second trial, the Court precluded Sangster's counsel from arguing in summation that he lawfully possessed his firearms, on the theory that Sangster had used narcotics, and therefore could not lawfully possess firearms.[2] Sangster's counsel was limited to arguing that Sangster had legally purchased or obtained the firearms, rather than legally possessing them. The jury convicted Sangster on both counts, and he now appeals.

---

[1] 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(C), (b)(1)(D); 18 U.S.C. § 924(c)(1)(A)(i).
[2] *See* 18 U.S.C. § 922(g)(3) ("It shall be unlawful for any person . . . who is an unlawful user of . . . any controlled substance . . . to . . . possess in or affecting commerce, any firearm.").

## II.[3]

Sangster raises two issues on appeal: that the District Court erred in denying his motion to suppress, and that it erred in limiting his counsel's summation. We address each in turn.

### A.

We review the District Court's denial of the motion to suppress for clear error as to findings of fact, and our review is plenary as to conclusions of law.[4] But "we conduct only a deferential review of the initial probable cause determination made by the magistrate," which is the same standard the District Court applied here.[5]

The Fourth Amendment protects the right to be free from "unreasonable searches and seizures."[6] Where a warrant is issued, it must be based "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[7] A magistrate judge may find probable cause when, after considering the totality of the circumstances, she determines that "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[8] As opposed to a "neat set of legal rules," probable cause is a "fluid concept—turning on the assessment

---

[3] The District Court had jurisdiction over this federal criminal prosecution under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

[4] *United States v. Williams*, 974 F.3d 320, 350 (3d Cir. 2020) (citing *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018)).

[5] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).

[6] U.S. Const. amend. IV.

[7] *Id.*

[8] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

of probabilities in particular factual contexts."[9]  As such, the warrant's supporting affidavit must be read in a common sense and nontechnical matter.[10]

Sangster argues that the District Court erred in denying his motion to suppress because the warrant affidavit did not establish probable cause.  He claims that the tips Detective Churilla received from the confidential informant were insufficient on their own to establish probable cause, and that officers did not sufficiently corroborate them.  Considering the totality of the circumstances surrounding the information, we disagree.  The Magistrate Judge had a "substantial basis" for concluding that that there was probable cause to search Sangster's home and vehicle.[11]

The warrant affidavit included multiple indicia of probable cause.  It specified that the informant, who was known to officers and had successfully assisted in prior prosecutions, claimed to have "purchased and watched . . . Sangster selling illegal narcotics," suggesting he or she witnessed drug trafficking firsthand.[12]  The informant provided detailed contact information, including Sangster's two cell phone numbers, Sangster's addresses, and the make, model and license plate of Sangster's vehicle, which Detective Churilla was able to confirm as being registered to Sangster.  Detective Churilla also met the informant in person three times, allowing him to personally assess the informant's credibility each time, and making him accountable to law enforcement should he mislead them.[13]  The

---

[9] *Id.* at 232.
[10] *Id.* at 230–31.
[11] *Stearn*, 597 F.3d at 554.
[12] App. 73.
[13] *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008); *United States v. Brown*, 448 F.3d 239, 249 (3d Cir. 2006).

informant's tips contained information not known to the general public, including that Sangster left his weapons lying in plain view in his Penn Hills home. The information was also recent: Detective Churilla's last meeting with the informant was at most two days before he applied for the warrant, and the informant had claimed that Sangster "currently ha[d] a large quantity of marijuana and cocaine at his" Penn Hills home.[14] This provides a sufficient basis to conclude that contraband would be found there.

Although Sangster argues this information needed further corroboration, Detective Churilla did confirm that the vehicle the informant claimed was Sangster's was registered to him, at the address the informant said he first operated from. After the informant claimed Sangster had moved to Penn Hills, Detective Churilla drove past this location and saw the same vehicle in the driveway, corroborating Sangster's link to this property.[15] While Detective Churilla only corroborated innocent details of the informant's tip, such corroboration can bolster the reliability and veracity of the information.[16] Detective Churilla also

---

[14] App. 74.

[15] Sangster argues that Detective Churilla's observation of the vehicle in the driveway did not corroborate either criminal activity, or that this was Sangster's residence. But police were not required to find that Sangster resided at this location in order to establish probable cause to search it: they merely had to establish a sufficient nexus between the house and the crime under investigation. *Stearn*, 597 F.3d at 560. The warrant affidavit had significant direct evidence connecting Sangster's drug operation to the Penn Hills address. The informant had claimed to see Sangster use that location to break down and sell drugs, and had seen his firearms lying around that house. Detective Churilla's single observation of Sangster's vehicle in the driveway merely served to corroborate the informant's claim that Sangster had moved his operation to Penn Hills, and that evidence would be found at that location.

[16] *Gates*, 462 U.S. at 244 (corroboration of only innocent details of couple's return plan enhanced reliability of anonymous tip); *United States v. Johnson*, 592 F.3d 442, 450 (3d Cir. 2010) (corroboration of color and direction of travel of taxi enhanced tip reliability).

had a much stronger basis for crediting the informant's reliability: he had successfully assisted law enforcement in five other cases, each of which led to guilty pleas. Under these circumstances, we are satisfied that the District Court correctly concluded that there was sufficient probable cause to issue the warrant.

But even if we were to conclude that probable cause was lacking, we would still affirm the denial of the suppression motion based on the good faith exception. The Fourth Amendment's exclusionary rule does not require suppression of evidence obtained by an officer reasonably relying on a search warrant issued by a neutral and detached magistrate, even if the probable cause determination is later found to be deficient.[17] While there are exceptions to this exception, none apply here.[18] Sangster argues in passing that the warrant here qualifies for one of these exceptions: that it was so lacking in indicia of probable cause as to render an officer's belief in its existence unreasonable. We disagree. Detective Churilla's affidavit described a reliable informant's description of criminal activity, where it allegedly took place, and provided a number of methods of corroboration. The warrant affidavit contained sufficient indicia such that official belief in the existence of probable cause was not unreasonable.[19]

---

[17] *United States v. Leon*, 468 U.S. 897, 923 (1984); *Stearn*, 597 F.3d at 561.

[18] We have previously identified four such exceptions "(1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function;" (3) where a warrant is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; and (4) where a warrant is "so facially deficient that it failed to particularize the place to be searched or things to be seized." *Stearn*, 597 F.3d at 561 n.19.

[19] *Id.* at 562.

We will therefore affirm the District Court's denial of Sangster's motion to suppress.

## III.

Second, Sangster argues the District Court erred by limiting his counsel's summation. How this claim arose determines our standard of review, and we address it briefly.

## A.

One of the two counts against Sangster was that "during and in relation to [a] . . . drug trafficking crime" he possessed his firearms "in furtherance of" drug trafficking.[20] The mere presence of a firearm is not by itself sufficient to show possession in furtherance of drug trafficking; the prosecution must demonstrate that the possession "advanced or helped forward a drug trafficking crime."[21] This Court has adopted a list of nonexclusive factors to determine whether a firearm possession advances or forwards a drug trafficking crime, known as the *Sparrow* factors.[22] One of the *Sparrow* factors is "the status of the possession (legitimate or illegal)" of the firearm.[23] Sangster stipulated that all of the firearms the authorities recovered "were all owned and possessed by" him.[24]

---

[20] 18 U.S.C. § 924(c)(1)(A)(i).
[21] *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004), *as amended* (Aug. 3, 2004).
[22] *Id.*
[23] *Id.* (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir. 2000), *amended on reh'g in part*, 226 F.3d 651 (5th Cir. 2000)). The remaining factors, none of which are relevant here, are "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, . . . whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.*
[24] App. 977.

At Sangster's first trial, his counsel argued extensively that he had lawfully possessed his firearms, and the Government agreed. This changed at the second trial. Two Government witnesses each raised the possibility that Sangster may not have lawfully possessed his firearms. Detective Churilla testified that Sangster's cell phone had photos and videos that apparently depicted Sangster using marijuana, and that users of unlawful drugs are prohibited from possessing firearms.[25] Master Patrol Officer William Friburger's testimony also suggested that Sangster used drugs, and therefore that he had not truthfully completed a background check form for one of his pistols when it asked if he used drugs. Sangster's counsel objected to this, and following a sidebar conference, the District Court precluded either party from introducing evidence of Sangster's possible drug use.

This evidentiary ruling presented issues for the closing arguments and jury charge. The District Court had intended to charge the jury by instructing it to consider each of the *Sparrow* factors, including whether Sangster lawfully possessed his firearms. In addition to Detective Churilla's testimony that Sangster had used marijuana, before the first trial the District Court precluded the Government from admitting a cell phone video into evidence that appeared to show Sangster smoking marijuana, concluding it was unduly prejudicial. The District Court was concerned that it would be misleading to allow Sangster to argue that he lawfully possessed the firearms, because the excluded evidence could support an inference that he was a user of narcotics, and therefore that his firearm possession was not lawful. It proposed the compromise that Sangster could argue that he lawfully purchased

---

[25] *See* 18 U.S.C. § 922(g)(3) (prohibiting any person "who is an unlawful user of or addicted to any controlled substance" from possessing firearms).

his firearms, rather than lawfully possessing them at all times. After further discussion with counsel, the District Court decided to excise the lawful possession *Sparrow* factor from its instructions, while permitting Sangster's counsel to argue that he had lawfully obtained the firearms.

**B.**

Our standard of review depends on whether Sangster waived, forfeited, or preserved the claimed error. To preserve a claim of error for judicial review, an appellant must have objected to a court's ruling, requested a certain course of action from the court, or otherwise brought the alleged error to the court's attention.[26] This Court applies a flexible, common-sense approach to preservation, asking only whether the issue was squarely presented to the district court.[27] Counsel need not use any specific form of words or incantation, the Court must simply be made aware of counsel's argument.[28]

Sangster's counsel did not object to either the proposed limitation on summation or the jury charge. He expressly consented to removing the lawful possession *Sparrow* factor from the charge, and confirmed that he would not mention lawful possession in closing. He never suggested that he should be able to argue that Sangster lawfully possessed his weapons at all times, and his arguments in opposition to the Government addressed whether Sangster had truthfully completed his background check forms. Although he did resist the Government's attempts to argue that Sangster's prior drug use rendered his

---

[26] Fed. R. Crim. P. 51(b).
[27] *United States v. Miller*, 833 F.3d 274, 283 (3d Cir. 2016).
[28] *Id.*; *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020).

possession unlawful, he never expressed any disagreement with the Court's restriction on summation, even initially stating that limiting summation to lawful purchase "was going to be [his proposed] solution" too.[29]  Sangster therefore cannot claim to have preserved the argument he now presses on appeal:  that the District Court erred in restricting his summation.  We thus agree with the Government that this claim was not preserved.[30]

Since this argument is not preserved,[31] our review may only be for plain error.[32]  To prevail on plain error review, Sangster must show (1) an error, (2) that is plain, and (3) that affected his substantial rights.[33]  If Sangster carries this burden, the Court then has discretion to determine whether to correct the error, but only if it seriously affects the fairness, integrity or public reputation of judicial proceedings.[34]

Sangster has not demonstrated that any of the plain error requirements have been met.  As to whether the District Court erred in restricting summation, Sangster argues that

---

[29] App. 1312.

[30] Sangster points to another place in the record where he claims to have preserved this argument.  After the District Court precluded Officer Friburger from testifying that Sangster was a user of marijuana, the Government sought to prevent his counsel from arguing in summation that he had lawfully possessed his firearms.  At that time, Sangster's counsel did not argue that closings should not be restricted, and the District Court did not rule on the issue, but decided to "ponder it" before closing.  App. 1220.  Sangster's counsel did not "inform the court . . . of the action" he wished the District Court would take, and as there was no ruling at that time, he could not bring an objection to the Court's attention.  Fed. R. Crim. P. 51(b).  Sangster therefore did not preserve any arguments concerning his summation there.

[31] The Government contends that Sanger waived this argument entirely.  If waived, an appeal on this issue would be precluded. *United States v. James*, 955 F.3d 336, 344 (3d Cir. 2020).  We need not determine whether Sangster waived or forfeited this argument however, because even if he merely forfeited it, he cannot prevail on plain error review.

[32] *Puckett v. United States*, 556 U.S. 129, 134 (2009).

[33] *United States v. Olano*, 507 U.S. 725, 732–34 (1993); Fed. R. Crim. P. 52(b).

[34] *Williams*, 974 F.3d at 340.

11

the prohibition on users of narcotics possessing firearms[35] could not apply to him, because the trial evidence was not sufficient to demonstrate that he was a regular user of illegal drugs.[36] As the Government could not establish that his possession was unlawful, he claims it was error to prevent his counsel from arguing that he lawfully possessed his firearms.

Sangster cannot show any error in limiting his summation under these circumstances. While a total denial of summation would violate his Sixth Amendment rights,[37] district courts have "great latitude in controlling the duration and limiting the scope of closing summations."[38] This includes ensuring that summation "does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial."[39] This is what the District Court's solution accomplished. It prevented the parties from using highly prejudicial and distracting evidence of uncharged criminal conduct that at most would have addressed only one nonexclusive factor on possession in furtherance of drug trafficking. Counsel was still permitted to argue that there was "no dispute that Mr. Sangster legally purchased the firearms" at closing, which he did.[40] The District Court acted within its wide latitude in restricting summation here.

---

[35] 18 U.S.C. § 922(g)(3).

[36] *Id.*; *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004) (holding that section 922(g)(3) requires proof the defendant was both a regular drug user at the time of the possession, and that the defendant had engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm).

[37] *Herring v. New York*, 422 U.S. 853, 852 (1975); *Glebe v. Frost*, 574 U.S. 21, 23–24 (2014) ("*Herring* held that complete denial of summation violates the Assistance of Counsel Clause.").

[38] *Herring*, 422 U.S. at 862.

[39] *Id.*

[40] App. 1352.

Finally, even if we could characterize the District Court's solution as error, Sangster cannot show that it was plain or that it affected his substantial rights. For an error to be plain, it must be clear or obvious at the time of appellate review.[41] There is nothing to suggest that limiting Sangster's summation to only permit him to argue that he "lawfully purchased" rather than "lawfully possessed" his firearms was clear or obvious. Similarly, he cannot demonstrate that the limitation affected his substantial rights. For an error to affect substantial rights on plain error review, Sangster "must make a specific showing of prejudice," which requires showing that the error affected the trial's outcome.[42] He has not done so here.[43] Because the limitation only slightly altered what counsel could argue, and pertained to only one of a number of nonexclusive factors, there is no reason to believe the jury would have reached a different outcome had it heard Sangster had lawfully possessed the firearms. Sangster therefore cannot meet the plain error standard.

---

[41] *Olano*, 507 U.S. at 734.

[42] *Id.* at 735; *United States v. Jackson*, 849 F.3d 540, 544 (3d Cir. 2017).

[43] Sangster argues that the Court should consider that his first trial ended with a hung jury, and thus that the limitation on summation prejudiced him here. However, the record suggests that other factors contributed to the first jury being unable to reach a verdict. After the first jury retired to deliberate, it sent out a note with three questions. The jury requested clarification on the concept of constructive possession, was concerned with an incorrect address on a form prepared by law enforcement concerning the search of Sangster's house, and it did not understand an abbreviation for text messages used on some of the evidence. The Court provided further instruction on constructive possession, and although the Government had failed to explain that the address discrepancy was a typographical error, and had not explained the text messages abbreviation, the Court instructed the jury to resolve any conflicts in the evidence, without further clarification on either point. The jury was still unable to reach a verdict. While we cannot conclusively determine why the first jury was unable to reach a verdict, their questions concerning unrelated evidentiary discrepancies and their inability to reach a verdict on either count rather than just on the firearms possession count suggests that factors beyond a distinction between "lawful possession" and "lawful purchase" drove their inability to reach a verdict at the first trial.

**IV.**

As we agree with the District Court that probable cause existed to search Sangster's residence and because he cannot show that his restricted summation qualifies as plain error, we will affirm his conviction.