## Ephraim H. Sargent *vs.* Eli Hubbard.

The grantor of a lot of land reserved " the right of way over the land to my land as usually occupied." The grantor's land referred to in this reservation had been usually occupied for the purpose of getting hay and other crops therefrom, but he had never carried hay across the granted premises, though he had used the way for agricultural purposes, such as carting manure and potatoes. *Held,* that he had a right to cart hay over the way, in loads not of unusual size or shape; and to cut down the limb of a tree which obstructed the use of the way, for that purpose.

Tort for breaking the plaintiff's close and cutting off the limb of a tree therein, on August 1, 1867. At the trial in the superior court, before *Devens,* J., the following facts appeared :

The defendant conveyed the close to James Sargent, the plaintiff's father, by deed dated April 18, 1865, "reserving the right of way over the above described land between Bryant's land and the house to my land as usually occupied, subject to gates and bars." On November 25, 1865, James Sargent conveyed the close to the plaintiff. The land of the defendant referred to in the reservation was a lot, adjoining the close, of about seven acres, which the defendant had usually occupied for the purpose of getting hay and other crops therefrom. The boundary between the plaintiff's close and this lot was impassable except at a barway which opened on the way in question. This barway had been made by James Sargent and the defendant before the delivery of the deed to Sargent, for the purpose of giving a way to the defendant across the close, and was wide enough, as was also the way, for the passage of loads of hay even larger than that driven through by the defendant at the time of the alleged tort as below stated. Before the deed from the defendant to James Sargent was delivered, it was understood by both parties thereto that there should be a way reserved for carting hay off the defendant's lot across the close by this tree, and Sargent had then shut up by a wall all other way across the close from the defendant's lot.

"Before the defendant sold to Sargent he had owned both lots since 1852, and had used this way for a cartway for certain purposes of agriculture, as carting manure and potatoes, but had carried no hay across the close before 1865. In June 1865, while James Sargent owned the close, he and the defendant graded a way by the tree, and cut off three or four limbs from it, so that the defendant, as stated by Sargent at the time, might get through with his hay upon the way. Sargent also then stated that the limb, the cutting off of which was the tort alleged, might also be cut off if necessary for that purpose, or even the tree be cut down if it was in the defendant's way. The limb in question was some two feet above those then cut off. That season in 1865, also in 1866 and in 1867, before this limb was cut off, the defendant had been over this way with horse loads of hay, but not so large as this one. On the occasion com-

plained of, the load he attempted to drive through was of about eighteen hundred pounds, and (as testified to) of ordinary size. Loads of hay are frequently drawn from the fields weighing three thousand pounds or more, by one yoke of oxen. This was drawn by one yoke of oxen. The defendant had been through the same day before with an ox load not quite so large; the limb brushed the top of it, and, when he attempted to go with this one, the limb, extending across the way from the tree, so obstructed the way that he could not pass with this load of eighteen hundred pounds, and to remove the obstruction, he sawed off the limb in a proper manner. The position of the limb had not been changed since the deed to Sargent was given. The height of the limb from the ground was six feet and a half. The defendant requested the plaintiff to cut off this limb before the defendant drove through, but the plaintiff refused and forbade the defendant so to do."

Upon the above facts, the judge ruled that "the defendant could not justify cutting off the limb, as there was no evidence that it would have obstructed the passage of a load of hay of the size he had usually been through with before, and that the defendant's right of way, by the terms of the reservation in his deed, was limited to such use," and directed the jury to return a verdict for the plaintiff; the jury accordingly found a verdict for the plaintiff for nominal damages; and the defendant alleged exceptions.

*G. Swan,* for the defendant.

*F. A. Gaskill,* (*G. F. Verry* with him,) for the plaintiff.

Ames, J. The lot of land upon which the alleged trespass was committed was conveyed by the defendant to the plaintiff's grantor, with a reservation of a right of way over it, "between Bryant's land and the house, to my (defendant's) land as usually occupied, subject to gates and bars." Under this reservation the defendant would have the right to make use of the way, as the same had been marked out or designated by the parties in interest, in any reasonable manner, and according to common usage, for the purpose of taking away the hay, or any other crop, that he might raise upon the land referred to. There is nothing in

the case as reported, to show that there was anything unusual or peculiar, either in the magnitude or shape of the load which he was carrying along the way at the time of the alleged trespass. It is expressly stated that the limb of the tree extended across the way at such a height above the ground that he could not · pass with the load; that it was a matter of necessity, from the situation of the barway, to pass under the tree; that before passing he had requested the plaintiff to cut off the projecting limb; and that the plaintiff had refused to do so himself or to permit the defendant to do so. It is difficult to see why the defendant had not the same right, under these circumstances, to remove this obstruction, that he would have had to smooth the surface of the way, or to pry out a rock that interfered with its use. It is a mistake, in our judgment, to interpret the reservation as restricting the defendant to the use of the way for loads of the same size as he had usually carried over it before that time. The reservation is not expressed with entire precision, but the words " as usually occupied " appear to us to refer to the land to which the right of way is attached, rather than to the way itself. But however that may be, it seems to be the more reasonable interpretation to consider these words as indicating that the right is to be exercised for the general purposes incident to the cultivation and removal of the crop, rather than as intended to limit in advance the size and shape of the loads to be conveyed.

Upon this view of the case, there was an error in the direction to the jury, and therefore the        *Exceptions are sustained.*