· MARIA L. BALDWIN *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    December 3, 1901. — April 2, 1902.·

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Way,* By prescription, extent of easement.

When a right of way has been acquired by prescription over a path steep in grade and during the whole of the use a railing has been maintained there reasonably necessary to the convenient use of the path in the winter season, the easement is the right not only to use the path but to use it with the railing.

The plaintiff had a right of way by prescription from a gate in his back fence along a path over the defendant's land to a railroad station of the defendant. When the right was acquired there was one dwelling house on the plaintiff's lot. The plaintiff built on the lot two additional houses with two tenements in each. The defendant denied the right of the plaintiff's tenants to use the path. *Held,* that the character of the use had not changed, and a finding was justified, that no additional burden was imposed on the land of the defendant, by the increased number of persons using the path in the same way.

BILL IN EQUITY, filed January 19, 1901, to restrain the obstruction of an alleged right of way by prescription from a gate in the plaintiff's back fence along a path over the defendant's land to a railroad station of the defendant in Somerville.

In the Superior Court the case was heard by *Braley,* J., without a jury. He found that the plaintiff was entitled to a footway or path from her land along the location of the defendant of at least two feet and six inches in width with a gutter upon the side next to her land, and a railing on the side next to the railroad track at least forty-six inches high as theretofore constructed, and to enter upon the path by a gate, the path or footway running between · the gate in the fence on the rear line of the plaintiff's land next to the railroad location and · thence along the location to the edge of the concrete next the defendant's station.

The defendant asked the judge to find and rule, that the

tenants of the plaintiff occupying the apartment houses constructed by the plaintiff on her land were not entitled to the use of the way, and that the use of the way was confined to the plaintiff and those succeeding to her rights in the estate as it existed in 1869 at the time when the dwelling house was built and occupied by herself and husband and those who might live with them in the dwelling house.   The judge declined so to find and rule, and held that the way was appurtenant to the estate of the plaintiff and to each and every part of it, and that there had been no change in the character of the use of it, and that no greater burden had been imposed on the servient estate, and entered a decree accordingly.   The defendant appealed.

*E. J. Rich,* for the defendant.

*S. C. Darling,* for the plaintiff.

HAMMOND, J.   1. The judge found that the grade of the path from the gate in the plaintiff's fence to the railroad station was steep, that in the winter it was somewhat difficult to use it, when icy, without a railing, and that from the time when the path was first used there was a railing there not less than forty-six inches in height.   We cannot say that on the evidence the finding was wrong.   Since, therefore, the railing was reasonably necessary to the convenient use of the path in the winter season, and was continually kept there, the easement acquired was not only to use the path, but to use it with the railing.   The right to the maintenance of the rail was under the circumstances a part of the easement.

2. The more difficult question is as to the extent of the easement.   The lot of the plaintiff had a frontage upon the street of one hundred and twelve and one half feet, extended in the rear the same distance on the line of the railroad, and had a depth of about one hundred and eighty-eight feet.   Prior to 1895, there were upon it only two buildings, a dwelling house which was occupied by one family, and a stable; and it may be inferred that the whole lot was used in connection with these buildings.   Recently, two houses, each having two tenements, were built on the lot, one in 1895 and the other in 1897, so that there are now upon it these three dwelling houses and a stable. The question is whether the right of way is such that it may be used by the tenants of the new houses.

. It is a way by prescription. In the case of a way by grant, the nature and extent of the easement is determined of course by the language of the grant construed in the light of the attending circumstances. In the case of a way by prescription, however, there is no language to guide us, and resort must be had to some other test. Since prescription presupposes a grant which is lost, the proof of the nature of the grant is to be found in use, and it is frequently stated in some form of language that the nature of the right acquired by use is measured and limited by the nature of the actual use. Thus it is said by Morton, J., in *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 344, 449 : " The right presumed to be granted is co-extensive with the use " ; by Bigelow, J., in *Atwater* v. *Bodfish*, 11 Gray, 150, 152 : " It must be limited to the use for which it is shown by the evidence to have been originally designed," and in *Richardson* v. *Pond*, 15 Gray, 387, 390 : " The common and ordinary use which establishes the right also limits and qualifies it " ; and by Finch, J., in *American Bank Note Co.* v. *New York Elevated Railroad*, 129 N. Y. 252, 266 : " The right derived from user can never outrun or exceed the user in which it had its origin." It is plain that if the doctrine is to be taken strictly, then the right must be confined to the very persons who have passed over the way, and in the case of a carriage way, as stated by Parke, B. in *Cowling* v. *Higginson*, 4 M. & W. 245, the right would " be confined to the identical carriages that have previously been used upon the road, and would not warrant even the slightest alteration in the carriage or the loading, or the purpose for which it was used."

No one would contend for so strict a construction ; and, as stated by the same judge in the same case, the truth is that one " must generalize to some extent." As in the case of a grant the language is to be construed in the light of the circumstances, so in the case of prescription the use is to be looked at in the same way. The nature of the right is not to be determined by the actual proved use alone, but by that in connection with the circumstances. If, for instance, it be proved that the way had been used for all purposes required by the person claiming it, that would be evidence of a general right. *Parks* v. *Bishop*, 120 Mass. 340.

It is to be noted that we are not dealing with a care in which there is any physical change in the kind of use of the way. It is a footway and nothing else. So far as respects the burden upon the servient tenement, it is immaterial whether the person using the way goes to one house or the other after passing through the gate. Each house is situated upon the land as it existed when the use began. The lot is the same, is small in size, and there never can be many dwelling houses upon it. The only change is that five families live there now instead of one, and the only change proposed in the use of the way is that more pedestrians may use it than before, but for the same purposes as before.

The case is therefore distinguishable from cases like *Ballard* v. *Dyson*, 1 Taunt. 279, where it was held that under the peculiar circumstances the use of a way for driving carts and pigs to the slaughter house of the plaintiff did not necessarily, as matter of law, show that such use was broad enough to give the right to drive horned cattle to the same, or *Cowling* v. *Higginson*, 4 M. & W. 245, where it was held that the proof of a user for farming purposes did not necessarily prove a right of user for the purpose of conveying coals, the products of a mine lying under the farm, or like *Atwater* v. *Bodfish*, 11 Gray, 150, where it was held that a right to use a way for the purpose of carting wood from a lot when in a wild and uncultivated state could not be extended to a larger use. In such cases there is an actual change in the physical objects passing over the road.

There is a class of cases, however, to which the above are analogous, and with which they are more or less intertwined, in which there is a change in the use of the dominant estate, as where a way has been used to carry off wood from wild land which is afterwards cultivated and built upon, or a way has been used for agricultural purposes to a farm which is afterwards turned into sites for manufacturing purposes, or mined for its ores, or divided into house lots. Here the change is radical and the right of way cannot be used for the new purposes required by the altered condition of the property. *Wimbledon & Putney Commons Conservators* v. *Dixon*, 1 Ch. D. 362. *Williams* v. *James*, L. R. 2 C. P. 577. *Atwater* v. *Bodfish*, *ubi supra*. But in all these cases there has been a substantial

change in the nature of the use, and a consequent increase of burden upon the servient estate.

In the case before us the judge has found that there has been no such increase. No case has been shown to us nor are we aware of any, where the change in the use of the land has been only in degree and not in kind, in which it has been held that the way could not be used to the land in the changed condition, especially if there was no increased burden upon the servient estate. To base a distinction upon such a change would be unwise in theory and impracticable in practice.

The judge before whom the case was tried found that there was no increase of burden. Under the circumstances the way once established must be held to be a way to the very same lot of land while used for the same general purposes as when the way was acquired.

*Decree affirmed.*