SUSIE MAY HODGKINS & another vs. SALVATORE J.
BIANCHINI & another.

Essex.   May 5, 1948. — July 2, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, SPALDING, & WILLIAMS, JJ.

*Way*, Private: extent, creation, infringement. *Easement.*

A deed of a strip of land, purporting to reserve a right of passage over
the strip to the grantor and also to one to whom he had previously con-
veyed other land, created no such right in the earlier grantee since
such grantee was a stranger to the deed containing the reservation.

A "privilege of a cart road to pass to and from" a highway to certain
premises "at all seasons of the year," created in 1820, was a general
right to make reasonable use of the servient land with vehicles includ-
ing dual wheel motor trucks.

A granted right of way included by implication the right to place gravel
upon portions of the servient land in order to make it passable.

Maintenance of a gate upon a strip of land and use of the strip for the
passage of cattle, which had been uses made of the strip by its owners
since the time of the creation of a right of way over it by deed more
than one hundred years before, were not in derogation of or an unlaw-
ful interference with the right of way; and the owner of the right of
way was bound to close the gate after passing through it.

BILL IN EQUITY, filed in the Superior Court on October
21, 1946.

The suit was heard on a master's report by *Pinanski*, J.

*J. R. Cahill, Jr.*, for the defendant Charles Bianchini.

*M. I. Bernstein*, for the plaintiffs.

SPALDING, J.   The plaintiffs in these proceedings seek a
declaratory decree to determine their rights and those of the
defendants in certain land in Rockport, hereinafter called
the "Lane."   The case was referred to a master and his
report, to which there were no objections, was confirmed
by an interlocutory decree entered by consent of the par-
ties.   The case comes here on the defendants' appeal from
a final decree.

Facts found by the master include the following: The
plaintiffs are the owners of land which includes a parcel
called the "Lane."   The "Lane" is the sole means of
access to the public highway (South Street) from a parcel

of land owned by the defendant Charles Bianchini, herein-after called the defendant. It is approximately twenty-one hundred feet long and about thirty-three feet wide, and runs southwesterly from South Street. The "Lane" and the land of the defendant were once owned by one Francis Pool. On October 2, 1820, Pool conveyed the parcel now owned by the defendant to George and James Gott by a deed which, after describing the premises, recited, "To-gether with a privilege of a cart road to pass to and from the main street to the said premises at all seasons of the year." The property over which the right to pass and repass was granted is the "Lane" mentioned above. On October 30, 1820, twenty-eight days later, Pool conveyed the "Lane" to one Andrew Lane, from whom the plaintiffs derive their title, by a deed which contained the following language: "reserving to myself and my heirs, also to George Gott and James Gott junior and their heirs a privilege of passing and repassing to and from our said lands through the aforesaid premises at all times without any hindrance or molestation whatsoever our putting up the bars or shut-ting the gates [1] whenever we pass through the said prem-ises." The Gotts were not parties to this deed. The plain-tiffs own land on both sides of the "Lane" and also land "beyond the farther end of the 'Lane' from South Street."

It appears that the lands bordering upon the "Lane" were formerly used for pasturage or for crops. "In addi-tion to the use of the 'Lane' for . . . a place over which cattle would go to pasture, the 'Lane' has been used during the past twenty-five or more years at various times by an owner of land lying on the opposite side of the 'Lane' . . . for carting gravel with motor vehicles, and horse drawn vehicles." The grantors of the defendant first used a motor vehicle on the "Lane" in 1931. The defendant acquired title to his property in October, 1946, and since that time has been selling gravel from a gravel pit thereon to his father Salvatore, also a defendant. Salvatore and those to whom he has sold the gravel have transported from fifteen

---

[1] As the master found "This deed . . . did not particularly define the places where the gates were to be maintained on the premises."

to twenty loads of gravel per day over the "Lane." Some of the loads were transported in dual wheel trucks which widened the worn part of the "Lane" by approximately two feet. It became necessary to place gravel on portions of the "Lane" in order that such trucks might be used. The "gravelling" was done by Salvatore. "Because of the amount of gravel needed and required to be placed in the ruts and on the surface of the 'Lane' and the nature of the use of the way by heavy vehicles, in dry weather, dust is created and is blown onto the grass grown within the 'Lane' and into the dwelling house of the plaintiffs."

At the present time there are between forty and fifty cows pastured by the plaintiffs on the lands adjacent to the "Lane." There is a gate (three hundred sixty feet from South Street) on the "Lane" which has been "maintained where now located during the period of time within the memory of old residents of Rockport." On the northwesterly side of the "Lane" between the gate and South Street are farm buildings, where the cattle are kept, and the plaintiffs' dwelling. The cows pass through this gate and then, without being driven, pass onto and over the "Lane" into the adjoining fields. In the latter part of the afternoon the cows gather at this gate, thereby interfering with, and causing considerable delay to, those travelling on the "Lane" with motor vehicles. On many occasions the defendants or their employees have failed to close this gate, with the result that the cows have wandered onto the public highway.

The final decree declared (1) that the use of the "Lane" by the defendants is limited to the terms of the easement contained in the original deed of October 2, 1820, to the Gotts, namely, "a privilege of a cart road to pass to and from the main street" to the premises now owned by the defendant; (2) that the plaintiffs are entitled to limit the use of the easement to the "confines of the roadway therein, namely, the cart road"; (3) that the plaintiffs are "entitled to require the defendants to put up the bars and shut the gates when passing to and from South Street over the 'Lane'"; and (4) that the transporting of loam and gravel over the "Lane" "exceeds any privilege shown to

have been acquired, amounts to a new servitude, and overloads the easement."

While that part of the final decree which declared that the defendants' use of the "Lane" was limited to the terms of the original deed to the Gotts was not erroneous, it needs clarification. The plaintiffs apparently take the position that the defendants' use of the way with motor vehicles is not permitted under the decree. The defendant, on the other hand, argues that such use is not forbidden. Unless, therefore, the rights of the parties are defined more precisely, there is little likelihood that the controversy between them will be settled by this litigation.

The rights of the defendant with respect to the "Lane" were established by the deed of October 2, 1820, from Pool to his predecessors in title, the Gotts. These rights were not affected by anything contained in the subsequent deed of October 30, 1820, conveying the "Lane" to the person from whom the plaintiffs derive their title. The Gotts were not parties to that deed. "An easement cannot be imposed by deed in favor of one who is a stranger to it." *Hazen* v. *Mathews*, 184 Mass. 388, 393. *Murphy* v. *Lee*, 144 Mass. 371, 374. We assume, as the defendant has argued, that the language in the later deed created an exception rather than a reservation (see *Stockwell* v. *Couillard*, 129 Mass. 231, 233), but that does not make the principle just stated any the less applicable. *Kronoff* v. *Worcester*, 234 Mass. 254, 259–260. The rights of the defendant were neither diminished nor enlarged by that deed.

The language "Together with a privilege of a cart road to pass to and from the main street to the said premises" used in the earlier deed constituted, we think, a grant of a general right of way for vehicles and did not restrict its use to horse drawn vehicles or limit the way to the width of vehicles then in common use. *Crosier* v. *Shack*, 213 Mass. 253, 256. *Mahon* v. *Tully*, 245 Mass. 571, 577. *Swensen* v. *Marino*, 306 Mass. 582. In the case last cited it was said at page 587, "We should be very slow to hold that even ancient rights of way, not expressly restricted as to the type of vehicle . . . could not be employed at all for the means of

transportation in common use by a succeeding generation."
See *Doody* v. *Spurr*, 315 Mass. 129, 133; *Sakansky* v. *Wein*,
86 N. H. 337, 341; Restatement: Property, § 484. See also
note, 53 A. L. R. 553. The case at bar is plainly distinguish-
able from *Clarkin* v. *Duggan*, 292 Mass. 263, on which the
plaintiffs rely. Since in that case the grant of the right of
way was "with teams only" it obviously did not include
automobiles.

It does not follow, however, that because the defendant
has a general right of way over the "Lane" he may exercise
it in any manner he sees fit. The way is "available for the
reasonable uses to which the dominant estate may be de-
voted." *Parsons* v. *New York, New Haven & Hartford Rail-
road*, 216 Mass. 269, 273. *Rajewski* v. *MacBean*, 273 Mass.
1, 6. The extent of travel and the size of the vehicles em-
ployed are not without limits. On the record before us we
are not prepared to say that these limits have been exceeded,
but they have been closely approached, if not reached.
While the defendant's use of the easement has doubtless
caused the plaintiffs some annoyance, it does not appear to
be so substantial as to be unreasonable or to amount to a
nuisance. See *Swensen* v. *Marino*, 306 Mass. 582, 584.

The right to use the "Lane" includes the right to make
reasonable repairs and improvements. *Guillet* v. *Livernois*,
297 Mass. 337, 340. *Mt. Holyoke Realty Corp.* v. *Holyoke
Realty Corp.* 298 Mass. 513, 514. "When an easement or
other property right is created, every right necessary for its
enjoyment is included by implication." *Sullivan* v. *Donohoe*,
287 Mass. 265, 267. The placing of gravel on portions of
the "Lane" does not appear to be an unreasonable exercise
of this right.

That part of the decree which declares that the use of the
"Lane" for transporting loam and gravel amounts to a new
servitude and overloads the easement is erroneous. Such a
construction of the easement is too narrow. See *Randall* v.
*Grant*, 210 Mass. 302. But the point need not be labored,
for the plaintiffs in effect conceded this at the arguments in
this court.

The defendant asserts that in maintaining a gate on the

"Lane" and in permitting cattle to go upon it the plaintiffs have unlawfully interfered with his use of the easement. We are of opinion that the facts found by the master do not support this contention. It appears that from the time the "Lane" was established in 1820 cattle have been pastured on the lands adjacent to the "Lane" and we infer — although there is no express finding to that effect — that since that time they have passed over the "Lane" in going to and from pasture. It also appears that gates have been maintained on the "Lane" since 1820. That is revealed by the deed of October 30, 1820. While, as stated above, that instrument did not create the easement from which the rights of the defendant stem, the recital "our putting up the bars or shutting the gates whenever we pass through the said premises" affords evidence that there were gates on the "Lane" at approximately the time the easement was created. The use made of the servient tenement at the time of the conveyance is a factor to be considered in determining the extent of the easement created. See *Tudor Ice Co.* v. *Cunningham*, 8 Allen, 139, 140; *Welch* v. *Wilcox*, 101 Mass. 162, 163–164; *Williams* v. *Clark*, 140 Mass. 238, 239. We think that at the time of the conveyance to the Gotts the parties must be presumed to have known and contemplated that the lands adjacent to the "Lane" were to be used for pasturing cattle; that the cattle would go upon the "Lane"; and that gates would be maintained on the "Lane" to prevent the cattle from straying upon the highway. Thus, in permitting their cattle to go upon the "Lane," the plaintiffs were not using it in derogation of the defendant's easement. The plaintiffs as owners of the servient estate are entitled to make such use of it as is consistent with the easement. *Healey* v. *Smith Carriage Co.* 265 Mass. 203, 208–209. Restatement: Property, § 486. In the circumstances the plaintiffs also had a right to maintain the gate near the entrance to the "Lane." *Short* v. *Devine*, 146 Mass. 119, 126. *Ball* v. *Allen*, 216 Mass. 469, 472–473. *Dunham* v. *Dodge*, 235 Mass. 367, 373. *Merry* v. *Priest,* 276 Mass. 592, 599–600.

If, as we hold, the plaintiffs have a right to maintain the gate, the defendant and those using the "Lane" in his right

are under an obligation to close it after passing through it. *Geohegan* v. *Henry,* [1922] 2 Ir. R. 1. *Mendelson* v. *McCabe,* 144 Cal. 230. *Phillips* v. *Dressler,* 122 Ind. 414, 416. *Amondson* v. *Severson,* 37 Iowa, 602. *Griffin* v. *Gilchrist,* 29 R. I. 200. Tiffany, Real Property (3d ed.) § 812.

It follows that the final decree is reversed and a new decree is to be entered defining the rights of the parties with respect to the "Lane" consistently with this opinion. We leave the details of the decree to be worked out by the Superior Court. But in general it should declare that the defendant and those using the "Lane" in his right may travel over the "Lane" in motor vehicles, the extent of such travel and the size of the vehicles used not to be in excess of that disclosed in the report of the master; that the plaintiffs' cattle may pass over the "Lane"; and that the plaintiffs shall have the right to maintain the gate near the entrance to the "Lane" and the defendant and those using it in his right must close it after passing through it.

*So ordered.*

