JOHN J. LAWLESS *vs.* MARY P. TRUMBULL & others,
trustees, & others.

Middlesex.   December 5, 1961. — February 8, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& SPIEGEL, JJ.

*Way,* Private: extent.   *Easement.   Adverse Possession and Prescription.*

On findings that there had been adverse use for more than twenty years
of an old eight foot cart path between a wood lot and a public way for
hauling out wood in "teams or trucks" for fuel in heating the house of
the owner of the wood lot, and for foot travel by that owner and mem-
bers of his family, a decision establishing as appurtenant to the wood
lot an easement over the cart path "for travel on foot or by vehicles"
was proper as to the foot travel, but with respect to the general right of
"travel . . . by vehicles" was too broad in view of the extent of such
adverse use.

PETITION, filed in the Land Court on May 9, 1957.

The case was heard by *McPartlin,* J.

*Joseph C. Robbins,* for the respondents.

*Frederic B. Dailey,* for the petitioner.

SPALDING, J.   This is a petition for the registration of
title to two parcels of land in Weston.   The petition was
originally brought by John J. Dooley but thereafter John J.
Lawless was substituted as petitioner.   The original peti-
tioner will be referred to hereinafter as the petitioner.

The only question presented arises out of an amendment
to the petition by which the petitioner claimed as appur-
tenant to his land a "right of way for all purposes for which
roads or town ways are now or may be hereafter used in
the Town of Weston from said premises northerly and
easterly to Loring Road in the 12-foot right of way shown
on a plan by Roland H. Barnes & Co. Civil Eng'rs dated
November, 1959, entitled 'Supplemental Sheet to Accom-
pany Land Court Plan Case No. 27539.' "

An old eight foot cart path, which appears in the supple-
mental plan, runs northerly from the locus to the "edge of

a blacktop driveway.'' The cart path continues to the center of Meadowbrook Road, a private way, and then turns in a northeasterly direction to the northerly side of Meadowbrook Road and continues across land of John S. and Marie L. Hayes to Loring Road, a public street. The petitioner's land is a wood lot. Until about eight years ago, it supplied the wood used in heating the petitioner's house. ''The lot had been used for this purpose continuously since its purchase by the petitioner's father over 50 years ago.'' The wood was carried out in teams or trucks which reached the locus by traveling along the cart path leading from Loring Road across the land of Hayes. The way was used for foot travel by the petitioner, his father and other members of the family.

After finding the foregoing facts, the judge concluded that ''there is appurtenant to the petitioner's locus a right of way 8 feet in width as shown approximately on the filed plan and the supplemental plan as 'Old Cart Path' across the area described on said plans as a '40 foot Right of Way,' 'Meadowbrook Road' and the land of Hayes to Loring Road for travel on foot or by vehicles.''

From this decision the respondents (the trustees of Weston Roads Trust, the trustees of Weston Real Estate Trust, and John S. and Marie L. Hayes, owners of land over which the asserted easement runs) appealed.

1. The respondents contend that the right of way which the judge found was appurtenant to the petitioner's land was in excess of the adverse use described in the decision. Stated differently, the respondents' position is that the subsidiary findings of the judge would entitle the petitioner to ''a right of way limited to the occasional use of a cart path to carry off firewood from the locus in its present state as wild and vacant land.'' The decision, it is argued, which gives the petitioner a right of way ''for travel on foot or by vehicles,'' is too broad.

The extent of an easement arising by prescription, unlike an easement by grant (see *Parsons* v. *New York, N. H. & H. R.R.* 216 Mass. 269, 273; *Hodgkins* v. *Bianchini,* 323 Mass.

169, 172–173), is fixed by the use through which it was created. *Atwater* v. *Bodfish,* 11 Gray, 150, 152. *Towle* v. *Trustees of Donations to the Protestant Episcopal Church,* 259 Mass. 256. *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 299. *Carson* v. *Brady,* 329 Mass. 36, 42. Restatement: Property, § 477. "[P]rescriptive rights are measured by the extent of the actual adverse use of the servient property, not by the extent of the threats of the dominant owner." Holmes, J., in *Middlesex Co.* v. *Lowell,* 149 Mass. 509, 511.

Some latitude, however, in variation of the use is permitted. "[N]o use can ever be exactly duplicated. If any practically useful easement is ever to arise by prescription, the use permitted under it must vary in some degree from the use by which it was created. Hence, the use under which a prescriptive interest arises determines the general outlines rather than the minute details of the interest." Restatement: Property, § 477, comment b. Under § 479, the following illustration is given: "2. A is the owner and possessor of Blackacre. He uses it as a wood lot. For the prescriptive period he uses adversely a way over Whiteacre to take to market wood from Blackacre. All the wood on Blackacre having been cut, A now uses it for agricultural purposes. A is privileged to use the way to take farm products grown on Blackacre to market." Our law is in accord with this view. *Parks* v. *Bishop,* 120 Mass. 340. *Baldwin* v. *Boston & Maine R.R.* 181 Mass. 166. But the variations in use cannot be substantial; they must be consistent with the general pattern formed by the adverse use. Thus, in *Towle* v. *Trustees of Donations to the Protestant Episcopal Church,* 259 Mass. 256, the petitioner claimed, as appurtenant to his land, a general right of way over land of the respondent. The judge found that the respondent's land had been used for the prescriptive period by owners of the dominant estate for hauling out sand for building and other purposes, and ruled that the petitioner had a limited right of way over the respondent's land for the purpose of hauling out sand. On appeal, this court said: "Applying

the law to the facts found, we think the rights acquired by the use of the locus under the circumstances cannot be construed to cover the claim of the petitioner to a right to use the way for all purposes for which 'any owner would want to use a right of way which adjoined his home,' and that the right of the petitioner is such only as is given him under the decree.'' To the same effect are *Atwater* v. *Bodfish,* 11 Gray, 150, 152, and *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 299–300.

In the case at bar the findings establish a use of the old cart path during the prescriptive period for carrying out wood by ''teams or trucks.'' Since the wood was used only for heating the petitioner's house, it is reasonable to assume that the use of the way was relatively infrequent. It was also found that the path was used by members of the petitioner's family for foot travel. On these findings the ruling of the trial judge that the petitioner had an easement ''for travel on foot or by vehicles'' was too broad. Doubtless, in view of the prior use, there was an easement for foot travel. But a holding that there was a general right to ''travel . . . by vehicles'' would overload the easement. Such a ruling would permit virtually unlimited use of the way by vehicles, with the attendant noise, wear and tear on the path, and traffic hazards. As compared with the prior infrequent transportation of firewood by teams and trucks, this change in use would be substantial.

2. The respondents' contention that the decision fails to locate with exactness the right of way and its width is without merit. The judge found that there was appurtenant to the petitioner's land a ''right of way 8 feet in width as shown approximately on the filed plan and the supplemental plan.'' An examination of these plans convinces us that the right of way was sufficiently defined.

3. The reference in the decision to ownership of the fee in the ''40 foot Right of Way'' being in the trustees of Weston Roads Trust cannot stand. This statement was undoubtedly due to inadvertence. The trustees of Weston Roads Trust in their answer assert no claim to that land.

On the contrary, they disclaim ownership (see G. L. c. 231, § 87; *Bancroft* v. *Cook,* 264 Mass. 343, 348), and they join in the request of the trustees of Weston Real Estate Trust to have the error rectified.

4. The decision is reversed. The findings and rulings are to stand with respect to the existence, location and width of the way. Concerning the extent of its uses, the decree to be entered is to be in conformity with this opinion. The decree likewise should rectify the error concerning ownership in the ''40 foot Right of Way.'' We leave the details of the decree to be worked out by the Land Court.

*So ordered.*