ROLAND D. GLENN vs. ORREN S. POOLE & others.[1]

Essex. April 14, 1981. — July 24, 1981.

Present: HALE, C.J., GREANEY, & KASS, JJ.

*Adverse Possession and Prescription. Easement. Way, Private: extent.*

Improvements and repairs to a road located on a right of way established by prescription, and the widening of the corners of the road at its entrance to a public way, when accomplished by the owner of the benefited estate, did not constitute an overburdening of the right of way. [295-296]

Although the use of a prescriptive easement for vehicular access and hauling had "markedly increased" after the prescriptive period, there was adequate support in the record for a judge's finding that the increase was "consistent with the general pattern formed by the adverse use." [296-297]

PETITION filed in the Land Court on November 9, 1975.

The case was heard by *Randall, J.*

*Bernard A. Kansky* for the petitioner.

*Francis L. Flatley* for the respondents.

KASS, J. As is often the case with easements, the governing principles are easier to state than to apply. So, for example, it is familiar law that a right of way may be acquired by prescription through twenty years of uninterrupted, open, notorious and adverse use. *Nocera* v. *DeFeo*, 340 Mass. 783 (1959). *Ryan* v. *Stavros*, 348 Mass. 251, 263 (1964). G. L. c. 187, § 2. And the extent of the easement so obtained is fixed by the use through which it was created. *Baldwin* v. *Boston & Me. R.R.*, 181 Mass. 166, 168 (1902). *Lawless* v. *Trumbull*, 343 Mass. 561, 562-563 (1962). Restatement of Property § 477 (1944). See *Dunham* v. *Dodge*,

---

[1] Louise B. Poole and Richard H. Poole.

235 Mass. 367, 372 (1920). Yet, the use made during the prescriptive period does not fix the scope of the easement eternally. See *Lawless* v. *Trumbull, supra* at 563. It may change over time, Restatement of Property § 479, Comment a (1944), and uses satisfying the new needs are permissible, *id.*, "[b]ut the variations in use cannot be substantial; they must be consistent with the general pattern formed by the adverse use." *Lawless* v. *Trumbull, supra* at 563. See also *Hodgkins* v. *Bianchini*, 323 Mass. 169, 173 (1948), which holds that once an easement is created, every right necessary for its enjoyment is included by implication.

With these principles in mind we turn to the facts found by the Land Court judge. The proceeding was one to register and confirm title under G. L. c. 185, § 1, in which the petitioner, Glenn, sought to eliminate entirely roads shown on the plan filed with the registration petition and, in the alternative, to establish that the use being made by the Poole family of the road called the "Gravel Road" constituted an overload of that easement. Facts found by a Land Court judge in registration proceedings shall not be disturbed by us if warranted on any view of the evidence and all reasonable inferences therefrom. *Lyon* v. *Parkinson*, 330 Mass. 374, 375 (1953). *Otis Power Co.* v. *Wolin*, 340 Mass. 391, 395-396 (1960). *Norton* v. *West*, 8 Mass. App. Ct. 348, 350 (1979). *Daley* v. *Swampscott*, 11 Mass. App. Ct. 822, 823, 830 (1981).

Glenn's land is a triangular parcel of 22.681 acres, "more or less," in Rockport. The base of the triangle bounds along the northerly side of Thatcher Road, a well traveled public street. Two right of way easements were originally in dispute: the "Gravel Road," which runs fairly directly from Thatcher Road in a northeasterly direction to the Poole property; and the "Wood Road," which, as shown on the filed plan, runs in a more meandering fashion from the easterly corner of Glenn's property at a point on Thatcher Road and eventually links up with the Gravel Road. As to the Wood Road, the judge determined that no prescriptive easement had developed, and only the status of the Gravel

Road is the subject of contention on appeal. Three generations of Pooles, the Land Court judge found, had used the Gravel Road from early in this century travelling back and forth from their property,[2] particularly to haul out wood. Those hauling operations were first conducted by horse-drawn wagon and, beginning in 1920, by truck. For a period of time the Pooles also operated a gravel pit and moved gravel to purchasers over the Gravel Road.

In the 1930's the Pooles got into the construction and snow plowing business and ran their equipment over the Gravel Road to their land, on which they stored their trucks, tractors and accessory gear. The fire chief of Rockport used heavy vehicles on the Gravel Road to fight fires, and other citizens of the town had used the road to gain access to a thickly forested area north of the locus. Over the years, the path of the Gravel Road did not change. Its surface, however, was gradually improved by the Pooles with gravel from their land and by the installation of a drainage pipe at a point about fifty feet in from Thatcher Road. As to the degree of improvement, i.e., as to width, clearing of brush and packing down of gravel, the evidence was conflicting. The judge found the surface to be "greatly improved" by the Pooles in 1972. As to the use of the Gravel Road, the judge found that it had markedly increased since 1972. In May of that year the Pooles had obtained a zoning variance to use their back land for a garage and repair shop.[3] All in all, however, the judge found the variation in the Pooles' use of the Gravel Road was "moderate" and "consistent with the general pattern formed by the

---

[2] The Pooles owned sixty to seventy acres.

[3] Before the variance, the Pooles maintained their storage and repair facility on Thatcher Road. It must have been something less than a tourist attraction for Rockport. One of several conditions attached to the variance required that the Pooles move their "shop" off Thatcher Street and the Land Court judge, after viewing the interior facility, observed: "The Court can well imagine the relief of the Zoning Board of Appeals to get these [carcasses of assorted vehicles] off the main street and into the woods, as it resembles a car wrecking yard with some animals wandering about."

adverse use." Glenn appeals from so much of the Land Court decision as preserved a right of way over the Gravel Road in favor of the Pooles.

1. *Acquisition of Easement by Prescription.*

In view of the abundant evidence of seven decades of open, uninterrupted and notorious use of the Gravel Road, a presumption arises that the use is adverse. *Flynn* v. *Korsack*, 343 Mass. 15, 18-19 (1961). *Ivons-Nispel, Inc.* v. *Lowe*, 347 Mass. 760, 763 (1964). *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 280-281 (1976). Cf. *Uliasz* v. *Gillette*, 357 Mass. 96, 101-102 (1970). Indeed, Glenn, who has owned a portion of the property over which the Gravel Road runs since 1951, said he never gave the Pooles permission to use it. Glenn does not so much contest that the Pooles have some prescriptive rights in the Gravel Road as he contests the extent of those rights.

2. *Extent of the Easement.*

We turn then to the question whether the Pooles have over-burdened the easement. The easement established during the prescriptive period was for vehicular access and for hauling. In this essential character it has not changed over the years. Compare *Socony Mobil Oil Co.* v. *Cottle*, 336 Mass. 192, 194, 197 (1957), in which it was held that an easement to certain premises, so long as a garage was maintained on them, terminated when the garage no longer housed automobiles but a car upholstery repair business. In the law of easements, a mutation is not within the scope of normal development. The progression from horse or ox teams to tractors and trucks is a normal development of the sort which, in the language of Restatement of Property § 479, Comment b (1944), "accords with common experience." See *Swensen* v. *Marino*, 306 Mass. 582, 587 (1940), in which the court said, "We should be very slow to hold that even ancient rights of way, not expressly restricted as to the type of vehicle . . . could not be employed at all for the means of transportation in common use by a succeeding generation.[4] See also *Hodgkins* v. *Bianchini*, 323 Mass. at

---

[4] It was not known in the *Swensen* case whether the easement arose through prescription or through grant.

172-173; Restatement of Property § 484 (1944). Moreover, the Pooles had been running heavy motorized equipment (e.g., a ten-wheel truck and a tractor) over the Gravel Road for sufficient years before Glenn began to assemble his property so as to have attained that right by prescription.

The improvements to the Gravel Road did not in and of themselves constitute an overburdening of the easement. Some of them, clearing of brush and laying down gravel and clinkers, had occurred during the prescriptive period. It is permissible for the owner of the dominant estate to make necessary repairs to the easement. *Guillet* v. *Livernois*, 297 Mass. 337, 340 (1937). *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 298 Mass. 513, 514 (1937). Restatement of Property § 480, Comment a (1944). Clearing limbs from a roadway, smoothing the surface of a way, placing gravel on a road, or even paving a road have been condoned as reasonable repairs, if necessary to enjoyment of the easement. See *Appleton* v. *Fullerton*, 1 Gray 186, 193 (1854); *Sargent* v. *Hubbard*, 102 Mass. 380, 383 (1869); *Hodgkins* v. *Bianchini*, 323 Mass. at 173. The most pronounced improvement which the Pooles made in the Gravel Road was to flare the corners of the entrance onto the Gravel Road from the public way (Thatcher Road), so that access can be less abrupt and so that the field of vision of drivers turning off and into Thatcher Road is enlarged. We do not think an improvement so consistent with safety goes beyond the principles we have discussed. The hazard of blind entry into Thatcher Road is not one which the owner of the easement must endure indefinitely, so long as the improvement does not "unreasonably increase the burden of the servient tenement." Restatement of Property § 480, Comment a (1944).

There is left to discuss the matter of the intensity of use. It is no coincidence that the Pooles' use of the Gravel Road "markedly increased," as the judge found, after the variance granted in 1972. With more of their business now located on their back land, the frequency of the Pooles' travel along the easement obviously grew. Some change in the extent of use has been accepted under our cases. So

where a prescriptive easement served a manufactory it could, when the original building burned down, serve a manufactory and storehouse, the change being only in degree. *Parks* v. *Bishop*, 120 Mass. 340, 342 (1876). In *Baldwin* v. *Boston & Me. R.R.*, 181 Mass. at 167, 169-170, an easement which originally served one dwelling was permitted to serve several dwellings. Closer to the facts in the instant case, in *Hodgkins* v. *Bianchini*, 323 Mass. at 172-173, an easement originally confined by grant to the "privilege of a cart road to pass to and from the main street to the said premises" did not preclude travel by gravel trucks carrying as much as fifteen to twenty loads per day. Contrast *Swensen* v. *Marino*, 306 Mass. at 586-587, where the hauling of sand and gravel was so intense as to impermissibly disturb occupants of the plaintiff's land and the easement was held to be overloaded. See also *Lawless* v. *Trumbull*, 343 Mass. at 564, in which the court held that a general right to travel by vehicles would overload an easement in circumstances where the prior use of the way was relatively infrequent. As to increase in intensity of use, the Land Court judge concluded that "[t]he variation in use is moderate and is consistent with the general pattern formed by the adverse use . . . . While respondents' recent use of the easement has doubtless caused the petitioner some annoyance it does not appear to be so substantial as to be unreasonable."

Upon a review of the record, we cannot say these findings are insupportable. There was no evidence of constant traffic or of debris or dust being cast on Glenn's land. If not exceeded, however, the limits of the Pooles' easement have been "closely approached, if not reached." *Hodgkins* v. *Bianchini*, 323 Mass. at 173. Additional expansion of the uses and width of the easement would probably be over those limits. As to the rights of the owner of the servient estate, see *Western Mass. Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 823-825 (1979).

*Decision affirmed.*