DENNIS O'BRIEN & others[1] vs. JOHN HAMILTON, JR. March 16, 1983. The plaintiffs O'Brien and Holmes each own a separate parcel of land in Kingston near Brook Street, a public way. Hamilton owns a sand and gravel pit on about nineteen acres of back land, which has no bound directly upon a public way. One access to the sand pit is by a "wood road" about 2,500 feet long, which runs south through the O'Brien parcel (about seven acres) and the Holmes parcel (about twenty-eight acres) and through other land. Another access to the sand pit runs south from the sand pit through other land "over . . . more difficult terrain" to a different public way.

The northerly wood road from the sand pit to Brook Street in 1920 was used by Holmes to haul wood by horse and wagon to Brook Street. It was then about eight feet wide and covered with pine needles. Nemis Benea bought the property now containing the sand pit in 1939 or 1940. He developed the pit and used the wood road to haul materials. He cleared the road to a width of ten feet so that he could use on it six-wheel, two-axle, trucks which carried about six cubic yards in each load. Such trucks, "with minor exceptions," were employed by Benea to carry sand for Benea's production of cement blocks, on land elsewhere in Kingston. He also made some sales of sand and gravel to customers. His vehicles between 1939 and 1963 made six or seven trips a day, for eight months a year, in trucks about eight feet wide.

In 1963 Benea transferred the sand pit to his son, Joseph. In 1969, the sand pit was sold to Hamilton. Joseph Benea "on occasion did use ten wheel vehicles" on the wood road, but between 1963 and 1967 there was less activity at the pit. In 1970 to 1972, while Hamilton owned the pit, about fifty trips to Brook Street were made, some with six-wheel trucks and some with ten-wheel trucks. By October, 1972, the wood road from the sand pit had changed from a wood road ten feet wide to a rough, uneven, badly washed dirt road with varying widths, at some points up to twenty or more feet.

The town of Kingston issued a restrictive order against Hamilton because he had no earth removal permit, but in early 1973, the order was removed. For thirty days, Hamilton caused to be made thirty trips a day using ten-wheel trucks and eighteen-wheel semi-trailers. The order removing the restraining order was appealed. This court in Kingston v. Hamilton, 2 Mass. App. Ct. 773, 774-775 (1975), sustained the validity of the town by-law requiring an earth removal permit and affirmed a decree enjoining Hamilton from removal activity "except as might be authorized by a permit issued by the selectmen."

---

[1] Edward Holmes, May Emond, and John Ruprecht. The judgment dismissed the action as to May Emond and John Ruprecht for reasons having no effect upon the interests of O'Brien and Holmes.

In 1977, Hamilton obtained a permit to operate the pit for one year, but with the restriction that he should not use the wood road to Brook Street. In 1981, Hamilton obtained another permit, without the restriction on the use of the wood road, but limited to the removal of 125,000 cubic yards each year. On June 15, 1981, Hamilton was prevented from using the wood road by a restraining order issued in the present case. Hamilton had continued to use the wood road for removing sand and gravel except during periods when prevented from doing so by court order.

The plaintiffs filed their complaint in this case on November 26, 1975. The case was heard without jury in the Superior Court in early July, 1981. The trial judge on July 21, 1981, made subsidiary findings essentially as summarized above. These had ample basis in the evidence, which is reported. The judge was not required to believe testimony suggesting that each Benea may have used ten-wheel or larger vehicles on the road and reasonably could interpret testimony as to such use as referring to exceptions to their general practice or to rare transportation of equipment to the pit. The judge concluded (1) that Hamilton's use of the wood road was "excessive and unreasonable and not similar in kind to the use made by [his] predecessors in title," (2) that the "use of eighteen wheel semi-tractor trailers" and "ten wheel dump trucks constitutes an overloading of" Hamilton's "prescriptive right when considering the attendant noise, wear and tear on the roadway and the traffic hazards"; (3) that the increase in the burden on the wood road by Hamilton's adverse use beyond that of his predecessors is undue "as to the type of vehicles used, the volume [of sand and gravel] removed, and the number of loads; and (4) that Hamilton has an easement by prescription to use the wood road limited to "use of the kind exercised for the twenty years it took to acquire" the easement by prescription.

The trial judge ordered that Hamilton be enjoined from removing materials from the sand pit over O'Brien's and Holmes's wood road to Brook Street except (a) by using six-wheel dump trucks with a capacity of about six cubic yards, (b) during daylight hours, Monday through Saturday, (c) at a rate not exceeding ten loads a day, (d) to transport equipment at the "pre-1972 level," and (e) over an area limited in width to ten feet upon the land of O'Brien and Holmes. Judgment accordingly was entered. (See, as to other original plaintiffs, note 1, *supra*). Hamilton appealed.

This court in *Glenn* v. *Poole*, 12 Mass. App. Ct. 292 (1981), considered (with ample citation of relevant authorities) issues regarding an alleged right of way acquired by prescription. The court then sustained a trial judge's decision approving a prescriptive use there considered on the basis of facts and findings somewhat different from those now before us. We need not repeat much that was well said in the *Glenn* case.

In general, the Massachusetts cases on prescriptive easements are consistent with the Restatement of Property §§ 477-480 (1944). See the cases cited, in the *Glenn* case, at 292-293; 2 American Law of Property, §§ 8.68-8.69 (Casner ed.1952 & 1962 supp.); 3 Powell, Real Property par. 413 (Rohan ed. 1981); 4 Tiffany, Real Property §§ 1193-1209 (3d ed. 1975 & 1982 supp.); Park, Real Estate Law § 280 (2d ed. 1981 & 1982 supp.). In the present case, the extent of the easement gained by prescription for the successive owners of the dominant land must be measured by "the *general pattern* formed by the adverse use" (emphasis supplied). See *Lawless* v. *Trumbull*, 343 Mass. 561, 563 (1962) (cited and relied upon by the trial judge in this case in his order for judgment). Doubtless, the precise use by which the prescriptive easement was established cannot prevent reasonable subsequent variation of that use, but unreasonably broad and substantial changes in a relatively infrequent or moderate adverse use cannot be justified except by continuing that substantial use for a new prescriptive period. See 2 American Law of Property, at § 8.69. Such unreasonable changes may be found to overload the easement. See *Glenn* v. *Poole*, at 297, *supra*, where (on the record in that case) this court pointed out that any "[a]dditional expansion of the uses and width of" the prescriptive easement there considered would probably exceed permissible limits.

Examination of the whole present record reveals that "the general outlines" of the prescriptive right of way (see Restatement of Property § 477 comment b) reasonably could be found to have been varied significantly by the use made by Hamilton in such periods, since his acquisition of the sand pit in 1968, during which he was allowed to use the wood road at all. As is said in 2 American Law of Property § 8.69, *supra*, "All that the owner of the servient tenement subject to a prescriptive easement has done is to fail to make effective objection to the use by which it was created. *It seems difficult to go further in the way of allowing new needs of a dominant tenement to be accommodated by a prescriptive easement than to hold that new uses will be permitted to the extent that acquiescence in the old uses justifies the inference that effective objection to the new uses would not have been made had such uses occurred during the prescriptive period*" (emphasis supplied). Certainly, the trial judge properly could conclude that O'Brien and Holmes (and their predecessors in title) would have taken steps to prevent the use of heavy and noisy ten-wheel and eighteen-wheel trucks and trailers on the wood road through their rural parcels if any such use had been more than sporadic during the prescriptive period or during any substantial period within twenty years prior to 1975 when the complaint in this case was filed. We perceive no respects in which the trial judge has failed reasonably to apply appropriate legal principles, or to consider the effect of his conclusions upon the affected parcels and their owners or has imposed undue restrictions on the future use of the easement.

*Judgment affirmed.*

*Harold Meizler* (*Joyce L. Arons* with him) for the defendant.
*Christopher C. Mathers* for the plaintiffs.