RICHARD D. CARMEL & another[1] vs. DAVID BAILLARGEON
& another[2]
(and a companion case[3]).

Hampshire.   October 9, 1985. — January 17, 1986.

Present: GREANEY, C.J., PERRETTA, & KASS, JJ.

*Way,* Public: establishment, discontinuance; Private: extent. *Real Property,*
Easement. *Adverse Possession and Prescription.*

In an action to determine the rights of abutting landowners in a public way
    after alteration of the grade of the county road into which it led closed
    one end of the way, the judge erred in determining that the way had
    been discontinued by implication and in substantially limiting its use by
    one of the abutters, where there had been no vote of the town which
    had declared the way public to discontinue the way. [428-429]
In an action to determine the rights of landowners in a new access road
    over the property of another, which had replaced the old "public way"
    access to the northerly end of a way along which they owned property,
    evidence that use of the new access had been limited to the few persons
    who owned land along the way south of its juncture with the new access
    warranted a finding that the easement by prescription acquired by those
    southerly landowners was private. [429-430]
On findings that a landowner and his predecessors in title used a private
    easement of passage, acquired by prescription, as a substitute for a no
    longer existing "public way" access for seasonal travel to and from their
    land by foot and automobile, and that a tenant on their land at one time
    hauled automobiles to and from the land on a three-car carrier truck, a
    decision precluding the landowner from using the access for traffic
    generated by operation of a campground and hauling gravel, and also
    precluding access to his social and business invitees, was proper as to
    the more intensive uses, but with respect to routine travel by social and
    business invitees was inconsistent with those findings. [430-431]

CIVIL ACTIONS commenced in the Superior Court Department
on May 22, 1981, and June 4, 1981, respectively.

[1] Claire A. Carmel.

[2] Robert L. Berry.

[3] Norman A. Beals & another *vs.* David Baillargeon & another.

The cases were heard by *Raymond R. Cross, J.*

*John H. Madden, Jr.,* for the defendants.

*Richard F. Buckley* for Richard D. Carmel & another.

*Robert W. Kidd* for Norman A. Beals & another.

KASS, J. In 1775, the inhabitants of Murrayfield (it later became Huntington) declared as a public way Old Wood Road, which ran in a southerly direction and parallel to the east bank of the east branch of the Westfield River.[4] See *Avery* v. *Stewart,* 1 Cush, 496, 501 (1848). Contrast *Newburyport Redevelopment Authy.* v. *Commonwealth,* 9 Mass. App. Ct. 206, 227 (1980). Never a significant thoroughfare, Old Wood Road nonetheless provided access to rural land in several ownerships lying south of Montgomery Road. We deal with rights in Old Wood Road after alteration of the grade of the county road into which it led closed the northerly end of Old Wood Road.

From 1775 to 1960, the northerly access to Old Wood Road was near a bridge over the Westfield River known anciently as the Norwich Bridge. (See the sketch appended to this opinion.) In 1960, in accordance with a taking made the preceding year, Hampshire County relocated and changed the grade of Montgomery Road so that it was about thirty feet higher than the grade of Old Wood Road. As a practical matter, the northerly terminus of Old Wood Road had become a dead end. Astride Old Wood Road there are, for purposes of this case, parcels of land located in descending order, going from north to south, owned by Carmel,[5] Keeney,[6] Beals;[7] Peck, and Baillargeon. (See sketch.) The Baillargeon parcel contains about sixty-five acres and is known as "Little Canada." South of the Baillargeon parcel, Old Wood Road crosses railroad tracks twice and changes names twice. It first becomes Thomas Road and then Carrington Road. The latter joins with Montgomery Road some two miles east of the Norwich Bridge.

[4] The major attraction at the head of Old Wood Road in 1775 was a tavern and grist mill under the proprietorship of Isaac Mixer. See Everts, History of the Connecticut Valley in Massachusetts 509 (1879).

[5] Richard D. Carmel and Claire A. Carmel, plaintiffs in one of the actions.

[6] In August, 1983, John H. Madden, Jr., a lawyer who represents the appellants in this case, acquired the Keeney parcel.

[7] Norman A. Beals and Sandra H. Beals, plaintiffs in the second action.

The trial judge found that at the time of the physical reloca-
tion of Montgomery Road in 1960, an access point to new
Montgomery Road "was provided" (the record does not say
by whom) at a point about a quarter mile away from the old
access of Old Wood Road. A new access road through the
Carmel parcel from Montgomery Road was built (again it is
not clear by whom) which joined with Old Wood Road at a
point just north of the Carmel-Keeney parcel boundary. (See
sketch.) Although frequently "barred or gated" by Carmel, the
southerly owners, including the owners or inhabitants of Little
Canada used the new access road with some consistency. (The
Bealses acquired an express right of way from Carmel.) The
judge found that the Baillargeons and their predecessors in title
had established an easement by prescription over the new access
road.

Use by southerly owners of Old Wood Road and the new
access proceeded without apparent incident until 1980, when
Baillargeon acquired a permit to operate a campground on
Little Canada. Assertion of their rights by the parties became
passionate when, in 1981, Baillargeon obtained a permit to
haul gravel from his holding. The Carmel complaint was filed
on May 22, 1981, and the Beals complaint on June 4, 1981.
The cases were consolidated for trial.

The judge determined that Old Wood Road had been discon-
tinued (he used the word "eliminated") by implication and that
Baillargeon had overloaded the easement he had acquired by
prescription. He entered judgment granting the plaintiffs equit-
able relief which substantially limited Baillargeon's use of the
road and new access and which provided for modest damages.
Baillargeon has appealed.

1. *Status of Old Wood Road as a public way.* There was no
vote of the town of Huntington to discontinue Old Wood Road.
Once duly laid out, a public way continues to be such until
legally discontinued. *Preston* v. *Newton,* 213 Mass. 483, 485
(1913). *Mahan* v. *Rockport,* 287 Mass. 34, 37 (1934). G. L.
c. 82, § 21. See *Schuffels* v. *Bell, ante* 76, 77 (1985), and,
by analogy, *Bliss* v. *Attleborough,* 200 Mass. 227, 230-231
(1908), the latter an opinion which deals with grade crossings
over railroad tracks and which eschews considering whether

a public way may be discontinued by implication. Little reason exists for courts to assume that public officials have given up a highway easement in a fit of absence of mind. If discontinuance is what a public body wants, it may act. See, for example, G. L. c. 81, § 22, and c. 86, § 3, which prohibit diminution through adverse possession of a State highway or a public way. See also G. L. c. 82, § 32A, as appearing in St. 1983, c. 136, which provides a procedure for discontinuance by municipalities of maintenance of public ways which have "become abandoned and unused for ordinary travel." Such public action as was taken in this case was taken by Hampshire County — which relocated Montgomery Road — not by the town.[8] The trial judge's determination that Old Wood Road had been discontinued was, therefore, in error and so was so much of the judgments as flowed from that determination. Abutters of Old Wood Road are entitled to use it for all purposes for which a public way may be used. The defendants' cutting and trimming of trees which obstructed the way did not constitute a trespass upon, or waste of, property of the plaintiffs.

2. *Status of the new access.* Since 1846, the establishment of a public way has required public action as prescribed by statute (see G. L. c. 82, §§ 21-24, inclusive [relating to town ways]) or public, adverse, and continuous use for the prescriptive period.[9] *Commonwealth* v. *Coupe,* 128 Mass. 63, 64 (1880). *Fenn* v. *Middleborough,* 7 Mass. App. Ct. 80, 83-85 (1979). Although the new access was a substitute for the old "public way" access, that circumstance does not place a public veneer on it in the absence of statutory action or the requisite public use. Use by the public connotes use by the general public. *Scott* v. *Worcester,* 257 Mass. 520, 523 (1926). *White* v. *Boston Gear Works, Inc.,* 315 Mass. 496, 499 (1944). *Fenn*

[8] When a municipality or other body having authority, by a laying out alters the location of a way, so much of the path of the old road as is not included in the new location is discontinued, without any words of discontinuance. *Goodwin* v. *Marblehead,* 1 Allen 37, 40 (1861). *Hobart* v. *County of Plymouth,* 100 Mass. 159, 165 (1868). *Cohasset* v. *Moors,* 204 Mass. 173, 177 (1910).

[9] Twenty years. *Sprow* v. *Boston & A. R.R.,* 163 Mass. 330, 339 (1895). Compare G. L. c. 187, § 2.

v. *Middleborough,* 7 Mass. App. Ct. at 84. *Newburyport Re-development Authy.* v. *Commonwealth,* 9 Mass. App. Ct. at 228. Evidence of traffic along the Carrington Road, Thomas Road, and Old Wood Road by persons travelling from a point in Montgomery to a destination in Huntington might have established use by the general public. There was no such evidence, however, and use of the new access had been limited to the few persons who owned land along Old Wood Road south of its junction with the new access. As such, the easement by prescription acquired by those southerly owners was private. See *Schuffels* v. *Bell, supra* at 78.

Having decided that the southerly owners, notably Baillargeon, have a private easement of passage over the new access, acquired by prescription, it remains to consider the scope of the easement. The applicable principles were reviewed, relatively recently, in *Glen* v. *Poole,* 12 Mass. App. Ct. 292 (1981). In summary, these are that the extent of the easement is fixed by the use through which it was created, but that use does not fix the scope of the easement eternally. The use may change over time through normal evolution to satisfy new needs, but the variations cannot be substantial; they must be consistent with the general pattern formed by the adverse use. *Id.* at 292-293, and authorities there cited. See also *O'Brien* v. *Hamilton,* 15 Mass. App. Ct. 960, 962 (1983).

The trial judge found that Baillargeon and his predecessors in title used the new access road, mostly in summer and fall (presumably it was generally too snow-covered in winter and too muddy in the spring), to travel to and from Little Canada by foot and automobile. A tenant on Little Canada operated an automobile salvage yard from 1967 to 1979 and hauled automobiles in and out of Little Canada on a three-car carrier truck. Operating a campground and hauling gravel in ten-wheel trucks, the judge found, were substantially more intensive uses. Accordingly, he determined that those uses overloaded the easement and were unlawful. We think the judge correctly decided that the comparatively occasional use of the new access road by a relatively few persons and vehicles was palpably lighter than frequent in-and-out trips by campers and frequent

trips by ten-wheelers hauling gravel. See *O'Brien* v. *Hamilton,* 15 Mass. App. Ct. at 962. See also *Lawless* v. *Trumbull,* 343 Mass. 561, 563-564 (1962).

The finding by the judge that Baillargeon and his predecessors in title had made routine use of the new access road for ingress and egress is inconsistent, under the principles we have set forth, with so much of his judgment as precludes access to social and business invitees of the Baillargeons. Normal evolution of their easement allows such routine travel by tradesmen, family, and social visitors.

As we read the record, the $100 in damages found by the judge in favor of the Bealses and the same amount in favor of the Carmels had to do with the cutting of overhanging branches and widening at some points of Old Wood Road. Those damages appear to be premised on the judge's erroneous conclusion that Old Wood Road had been extinguished and that full dominion of the land over which the way passed had reverted to the owners of the fee. Maintaining Old Wood Road in passable condition (consistent with its traditional use) is permitted to a user of it. See *Perry* v. *Planning Bd. of Nantucket,* 15 Mass. App. Ct. 144, 158 (1983). The award of damages was error.

The judgments are reversed in part and modified in part. New judgments are to enter that: (1) Baillargeon may use Old Wood Road as a town way and may keep it free of forest growth to the extent necessary for vehicular use; (2) Baillargeon and his occasional social and business invitees may use the new access over the property of the Carmels for pedestrian and vehicular travel; and (3) Baillargeon may not use the new access over the property of the Carmels for traffic generated by operation of a campground or by gravel removal or similar purpose resulting in the frequent coming and going of vehicles. Should the town desire greater use of the new access road, it may lay it out as a town way.

*So ordered.*