ANTHONY W. GRAZIANO & another[1] *vs.* VIRGINIA M. RILEY[2]
& another.[3]

No. 12-P-403.

Norfolk. October 9, 2012. - February 14, 2013.

Present: BERRY, GREEN, & MEADE, JJ.

*Easement. Drain. Real Property,* Easement, Drain, Nuisance, Riparian rights.
   *Nuisance.*

In a civil action involving the defendants' stone and earthen berm, which
   blocked the path of a deeded drainage easement serving the plaintiffs'
   property, the judge correctly concluded that the berm's continued existence
   for more than forty years barred the plaintiffs from relying on the rights
   granted by the easement, but the judge erred in further concluding that the
   berm's presence constituted a continuing nuisance, where, under the law at
   the time of the berm's erection, the berm did not constitute a nuisance.
   [282-284]

CIVIL ACTION commenced in the Superior Court Department on
September 12, 2005.

The case was heard by *John P. Connor, Jr.,* J.

*Gerald T. Anglin* for the defendants.

*Peter L. Eleey* for the plaintiffs.

GREEN, J. After a jury-waived trial, a Superior Court judge
found that the defendants had erected a stone and earthen berm
that blocked the path of a deeded drainage easement serving the
plaintiffs' property, but that the berm's continued existence for
more than forty years barred the plaintiffs from relying on the
rights granted by the easement. The judge nonetheless ordered
the defendants to remove the berm, based on his conclusion that
its presence constitutes a continuing nuisance. Because the
defendants erected the berm before the doctrinal change to

_____

[1]Nicole C. Graziano.

[2]Individually and as trustee of the V.M.R. Nominee Realty Trust.

[3]John J. Riley.

Massachusetts common-law riparian rights announced in *Tucker* v. *Badoian*, 376 Mass. 907 (1978), however, its erection did not constitute a nuisance under then applicable law; we accordingly reverse the judgment concerning the plaintiff's nuisance claim.[4]

*Background.* We summarize the findings of fact entered by the trial judge. The plaintiffs purchased 42 Deep Run Road in Cohasset on July 13, 2004. Abutting the plaintiffs' property to the rear, and down gradient, is property owned by the defendant Virginia M. Riley, as trustee of V.M.R. Nominee Realty Trust (trust). Riley initially purchased the property with her husband, the defendant John J. Riley, on May 20, 1966; the couple built a home on the property that year and have resided there from that time to the present.[5] The residence on the plaintiffs' property was already in existence at the time the defendants purchased their property.

Both properties slope downward in an easterly direction toward Jerusalem Road, and then to the Atlantic Ocean. Accordingly, surface water naturally flows from west to east across both properties, from the plaintiffs' to the defendants' property. A 1953 subdivision plan shows a drainage easement that begins on the westerly side of Deep Run Road, opposite the plaintiffs' property, and then runs under the road and across the plaintiffs' property onto the defendants' property. Thereafter, the easement continues across Haystack Lane and ultimately to the ocean.

Around the time the defendants built their home, they constructed an earthen berm, topped by stones, along the boundary line between their property and the property now owned by the plaintiffs.[6] The berm blocked the natural downslope flow of drainage across the defendants' property and, additionally, blocked its flow through the deeded drainage easement area.

Shortly after moving into their home in 2004, the plaintiffs

---

[4]We decline the defendants' request that we order the plaintiffs to comply with an order issued by the Cohasset Conservation Commission that, they contend, the plaintiffs continue to violate. The trial judge found that the plaintiffs have complied with the order, and the defendants cite no record evidence to demonstrate that the judge's finding in that respect was clearly erroneous.

[5]At some point following their initial purchase, the couple conveyed title to the trust.

[6]The defendants denied having built the berm, but the judge's finding that they did is not clearly erroneous.

observed that when the water table was high, there was a pond-
ing of water on the back, or easterly, side of their property,
abutting the defendants' property.

In an effort to devise a solution to the ponding problem, the
plaintiffs retained an engineering firm in 2006. At or about the
same time, the town initiated its own effort to improve the
drainage in the area of the parties' properties. The town obtained
easements from various affected property owners, but did not
successfully complete negotiations with the defendants for an
easement across their property. The plan devised by the plaintiffs'
engineer has been reviewed by the Cohasset Conservation Com-
mission and meets with its satisfaction, but will not be approved
until it provides for connection to the newly designed town drain-
age system.[7] Drainage across the defendants' property is neces-
sary for implementation of the proposed drainage system.

After negotiations between the town and the defendants failed
to produce an easement across the defendants' property, the
plaintiffs commenced an action in the Superior Court seeking
relief under various theories, and both parties appealed from the
resulting judgments.[8]

*Discussion.* The trial judge correctly recognized that the

[7]Though drainage across the defendants' property is necessary for implementa-
tion of the proposed system, we note that the order imposed by the judgment
does not appear to achieve that objective. That is to say, the proposed system
envisions connection to a particular outlet on the defendants' property, and
continuation of the drainage from that outlet to its eventual discharge into the
Atlantic.

[8]The plaintiffs' complaint sets forth three counts, based on nuisance, negligent
trespass, and "trespass/interference with an easement," respectively. The
defendants counterclaimed, asserting damages to their property caused by the
plaintiffs. The docket reflects that the defendants also filed a third-party
complaint, asserting claims against various other parties, who are not parties
to this appeal; the record does not include a copy of that pleading.

Four separate judgments were entered: (1) "Judgment on Finding of the
Court Re: Count I (Nuisance)"; (2) "Judgment on Finding of the Court Re:
Count II (negligent trespass) and Count III (trespass/interference with Ease-
ment)"; (3) "Judgment on Finding of the Court Re: Counterclaim"; and (4)
"Judgment Re: All remaining claims." The judgment on count one of the
complaint included the order to remove the berm and is the principal subject of
this opinion. The judgment on counts two and three of the complaint, and the
judgment on the counterclaim, dismissed those counts and the counterclaim.
The judgment on "all remaining claims" recites that it was based on an agree-
ment by the parties to dismiss them.

defendants' placement of the berm across the drainage easement was wholly incompatible with the plaintiffs' use of the easement, so that its presence for more than twenty years barred the plaintiffs from asserting any rights to use the easement for drainage.[9] See, e.g., *New England Home for Deaf Mutes* v. *Leader Filling Stations Corp.,* 276 Mass. 153, 159 (1931); *Cater* v. *Bednarek,* 462 Mass. 523, 528 n.16 (2012).[10] Hence, the plaintiffs' claims for trespass and for interference with a drainage easement were appropriately dismissed. See note 8, *supra.* The trial judge also correctly recognized that he lacked authority to compel the defendants to grant an easement across their property. See *Goulding* v. *Cook,* 422 Mass 276, 279-280 (1996). The judge erred, however, in concluding that the berm constitutes a continuing nuisance, warranting an equitable order compelling its removal.

At the time the defendants constructed the berm, Massachusetts followed the so-called " 'common enemy' approach to surface water problems. See, e.g., 6A American Law of Property § 28.63, at 189-190 (A.J. Casner ed. 1954)." *Tucker* v. *Badoian, supra* at 913. Under then applicable law, "one landowner [was] free to stop surface water from entering his land despite harm to his neighbor." *Id.* at 912. In addition, such a landowner could "with impunity grade and improve his land for a lawful purpose even though he thereby diverts surface water onto his neighbor's land." *Ibid.* Accordingly, though construction of the berm interfered with the rights of the plaintiffs' predecessors in interest under the drainage easement (an infraction against which the limitations period has long since expired), it did not constitute a common-law nuisance.

In *Tucker* v. *Badoian, supra,* six Justices of the Supreme Judicial

[9]There is no merit to the plaintiffs' contention, based principally on the defendants' attempts at trial to deny having built the berm, that the judge erred in concluding that the defendants' interference with the easement was open and notorious. The trial judge's finding that the defendants erected the berm relied in significant part on testimony by the son of the couple who owned the plaintiffs' property in 1966, to the effect that the berm was not in place on the defendants' property, and water did not pond on the plaintiffs' property, before the defendants purchased their property. The berm is a significant physical alteration of the natural grade of the property, which the plaintiffs acknowledge has caused significant ponding on their property since its installation.

[10]To the extent that the judge expressed the view that, though the plaintiffs were barred from asserting rights under the easement, the easement was not extinguished by the defendants' continued interference with it, he was incorrect.

Court joined in a concurring opinion announcing an intention to change Massachusetts law on riparian rights, to adopt the more flexible "reasonable use" standard for application in future cases. See *id.* at 916-918 (Kaplan, J., concurring). However, the opinion specifically and pointedly stated that "the new standard should be reserved for prospective application, that is, for conduct occurring hereafter," based on concern that conduct preceding the opinion had relied on settled law of long standing. *Id.* at 918-919. Indeed, there are doubtless many artificial structures, berms, or other modifications to natural grades throughout the Commonwealth that were put in place before 1978 that would be vulnerable to orders for removal, were they viewed as a continuing nuisance under the more recent reasonable use standard.

In concluding that the berm constituted an actionable continuing nuisance, the trial judge applied the reasonable use standard. However, the berm was fully completed and in place in 1966, more than ten years before adoption of that standard. There is no indication in the record that the defendants altered or expanded the berm in any manner after 1978.[11] The judgment compelling removal of the berm accordingly must be reversed.[12]

*Conclusion.* The "Judgment on Finding of the Court Re: Count I (Nuisance)" is reversed. The remaining judgments are affirmed.

*So ordered.*

---

[11]Though the trial judge referred to other more recent conduct of the defendants he viewed as "unreasonable," it was not of a character that qualifies under our law as nuisance. Specifically, the judge referred to the defendants' refusal "to cooperate with the town in implementing a solution at no cost to them," and "stonewall[ing] the issue." Though the judge was understandably frustrated with the uncooperative posture adopted by the defendants to a seemingly reasonable solution to a community-wide problem, it is not the role of the courts to exert "a general power of equitable adjustment and enforced good neighborliness." *Goulding* v. *Cook, supra* at 280.

[12]Our decision does not foreclose implementation of the town's proposed solution. Unlike the plaintiffs (and the court), the town has the power and authority to require the defendants to grant an easement to facilitate completion of the proposed new drainage system for public benefit, upon payment of just compensation. Though previous attempts to negotiate mutually acceptable terms apparently were unsuccessful, the defendants cannot hold the town hostage to unreasonable demands: "[t]he power of eminent domain is granted just to prevent private property owners from extracting such strategic rents from the public." *Goulding* v. *Cook, supra* at 279.