NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-77

RALPH P. AMELIA, trustee,[1] & others[2]

vs.

10 JUNIPER HILL ROAD LLC & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, as trustees of two realty trusts, commenced this action against the defendants, an LLC[4] and a realty trust, for nuisance and declaratory relief based on the presence of a concrete barrier blocking Pigeon Lane, a private way abutting the defendants' properties.  The plaintiffs maintain that the

---

[1] Of the Amelia Family Nominee Trust.

[2] Anna L. Amelia, trustee of the Amelia Family Nominee Trust, and Lisa Lyons, trustee of the LAL Realty Trust.

[3] James F. Sweeney and Emily Sweeney, trustees of the 104 Pigeon Lane Realty Trust.  Two additional defendants, Zadik and Alis Ozcan, were named in the complaint but were dismissed by consent before discovery began.

[4] While this suit was pending in the trial court, 10 Juniper Hill Road, LLC conveyed 10 Juniper Hill Road to another, reserving to itself the fee in Pigeon Lane.

barrier interferes with their easement rights in the southern portion of Pigeon Lane. The plaintiffs appeal from a judgment of a Land Court judge declaring that (1) the plaintiffs' rights over Pigeon Lane are limited to the prescriptive rights delineated in Corcoran vs. Dellepigne, Mass. Land Ct., Misc. No. 103436 (June 8, 1983);[5] and (2) use of Pigeon Lane to reach properties owned by the plaintiffs and others in an abutting subdivision to the north would constitute an overburdening of that easement. We affirm.

Background. "We recite the facts drawn from the parties' pleadings and the exhibits attached thereto" (quotation and citation omitted). Mullins v. Corcoran, 488 Mass. 275, 276 (2021). Pigeon Lane is a private way in the city of Waltham that serves three subdivisions: Woodland Park, approved in 1966; DeVincent, approved in 1966; and Pigeon Hill Estates, approved in 1980. Roughly, Pigeon Lane runs north and northwest from Forest St., a public way; the Woodland Park subdivision runs from north to south along the eastern side of Pigeon Lane; the

---

[5] On appeal to this Court from the Land Court judge's June 8, 1983 decision, a panel issued a one-page order essentially adopting the Land Court judge's reasoning and affirming the judge's decision. See Corcoran v. Dellepigne, 18 Mass. App. Ct. 1113 (1984). We use the Mass. App. Ct. citation when referencing the panel's decision; we use "Corcoran I," when referring to the June 8, 1983 Land Court judge's decision, and "Amelia," when referring to the Land Court judge's decision dated September 22, 2023, presently before us.

2

DeVincent subdivision runs north to south along the western side of Pigeon Lane. The Pigeon Hill Estates subdivision, the plan for which was approved in 1980 and recorded in 1982, lies to the north of the DeVincent subdivision and west of the Woodland Park subdivision. In other words, to access the Pigeon Hill Estates subdivision from the public way by Pigeon Lane, one would drive past the homes in the DeVincent and Woodland Park subdivisions that abut Pigeon Lane.

The defendants' residential lots, 10 Juniper Hill Road and 104 Pigeon Lane, are part of the Woodland Park subdivision and the DeVincent subdivision, respectively. The plaintiffs' lots, 205 Pigeon Lane and 1 Lisa Lane are located in the Pigeon Hill Estates subdivision.

Before development of the Pigeon Hill Estates subdivision, the northwest end of Pigeon Lane was abutted by two parcels: the land of Joseph and Maria Dellepigne[6] (Dellepigne parcel), and a parcel owned by Cambridge Council, Boy Scouts of America, Inc. (BSA Parcel). The trustees of the Pigeon Hill Estates Trust purchased the Dellepigne and BSA parcels and later filed the Pigeon Hill Estates subdivision plan, showing fifty-seven lots with access via Pigeon Lane. The plaintiffs' properties,

---

[6] For consistency, we adopt the spelling of Dellepigne used in prior related cases in this court and in the Land Court. We note that the title documents in the record use "Delle Pigne.".

purchased from the Pigeon Hill Estates Trust, were once part of the BSA parcel. The defendants' lots sit at the northern ends of the DeVincent and Woodland Park subdivisions. All parties' properties abut Pigeon Lane.

In the early 1980s, while the sale of the Dellepigne parcel was pending, three property owners in the Woodland Park subdivision and one property owner in the DeVincent subdivision filed suit against the Dellepignes and one of the plaintiffs in the present action (in his capacity as trustee of Pigeon Hill Estates Trust), seeking a declaration of their own rights to use Pigeon Lane and to enjoin Dellepigne and the trustee of Pigeon Hill Estates trust from using Pigeon Lane to access their properties. See Corcoran I, at 1.[7] In Corcoran I, the Land Court judge found that Pigeon Lane has existed since at least 1871 and appeared in the Waltham Atlas in 1911. Id. at 12, 15. In 1966, when the Woodland Park and DeVincent subdivisions were approved, however, Pigeon Lane was a narrow country lane "wide enough at the very most for two cars to pass." Id. at 16.

The judge in Corcoran I concluded that the Dellepigne property benefitted from an express easement by grant over Pigeon Lane for the full length of the way. Id. at 10. The judge also found that although the BSA parcel did not benefit

_____

[7] Page number references for Corcoran I are to the Land Court's slip opinion.

4

from an express grant, it had acquired an easement by prescription, based on prior use of Pigeon Lane by the Boy Scouts to access camp sites in the summer, and year-round access by a caretaker who lived on the BSA parcel until 1970. Id. at 12. The judge found that the historical use of Pigeon Lane was "not a broad use," and was limited to "ingress and egress on foot or by vehicle." Id. at 16. Thus, even though Pigeon Lane had since been improved and widened where it abutted the Woodland Park and DeVincent subdivisions, the judge concluded that both the granted rights of the Dellepigne parcel and the trustees' prescriptive easement rights in Pigeon Lane were "limited to an area 20 feet in width through the Woodland Park and DeVincent Subdivisions, located in the midsection of Pigeon Lane." Id. at 17. Moreover, the court ruled "that the proposed building of houses on 57 lots and use by their owners of the way would overburden Pigeon Lane." Id. at 19.[8]

A panel of this court affirmed the judgment in Corcoran I, holding that "[t]here is no merit to the argument of the

---

[8] Before the Land Court issued its decision in Corcoran I, the defendants' predecessors in title, as owners of individual lots in the Woodland Park Subdivision or the DeVincent subdivision, granted to the trustees of Pigeon Hill Estates Trust "the right in common with others, to use all the streets and ways in" the Woodland Park Subdivision and the DeVincent subdivision "for all purposes for which streets and ways are commonly used in Waltham." These grants were not before the judge in Corcoran I.

defendants that the judge was required to calibrate what manner of use of Pigeon Lane by the defendants would be consistent with their easement" -- that "the judge did sketch the general outline" -- and "[t]he proposed loading onto the easement of access to 57 residences manifestly overloads the light 'horse cart' use and camp visiting use through which the easement was acquired." Corcoran, 18 Mass. App. Ct. at 1113. The Supreme Judicial Court denied further appellate review. See Corcoran v. Dellepigne, 393 Mass. 1104 (1984).

In 1984, after the Corcoran decision, the trustees purchased additional adjoining land to provide alternative access to the proposed Pigeon Hill Estates subdivision, built Forest Park Drive for that purpose, and ultimately constructed seventy homes in the Pigeon Hill Estates subdivision. Beginning in 1984, however, there was a concrete barrier on Pigeon Lane between the Pigeon Hill Estates subdivision and the northern end of the Woodland Park and DeVincent subdivisions, which the Pigeon Hill Estates trust removed in 2002. Shortly thereafter, the former owner of 10 Juniper Hill Road constructed the barrier as it exists today, blocking access to the southern portions of Pigeon Lane from Pigeon Hill Estates. The plaintiffs commenced this action on March 11, 2022, seeking removal of the barrier.

On the plaintiff's motion for summary judgment and the trustees of 104 Pigeon Lane Realty Trust's motion for judgment

6

on the pleadings, the judge noted that the plaintiffs, as owners of former BSA property, had a prescriptive easement only, and the conclusion that use of the easement to access the homes in Pigeon Hill Estates would overburden Pigeon Lane "is as true today as it was in 1983." The judge rejected the argument that there had been a material change in circumstances and dismissed the plaintiffs' nuisance claim.

Discussion. 1. Standard of Review. "A motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c) is 'actually a motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.'" Mullins, 488 Mass. at 281, quoting Jarosz v. Palmer, 436 Mass. 526, 529 (2002). "We review the allowance of a motion for judgment on the pleadings de novo." Id. "In deciding the motion, all facts pleaded by the nonmoving party must be accepted as true. We also may rely on matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" (citations and quotation omitted). Id.

2. The plaintiffs' easement rights. a. Prescriptive easement. The plaintiffs claim that the barrier interferes with their limited prescriptive easement rights in the southern portion of Pigeon Lane. The defendants assert, as they did in

the Land Court, that under the doctrine of issue preclusion, this claim has been resolved and may not be relitigated.

"The doctrine of issue preclusion provides that when an issue has been 'actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim.'" Mullins, 488 Mass. at 281, quoting Jarosz, 436 Mass. at 530-531. "[T]he issue in the prior adjudication" must be "identical to the issue in the current adjudication." Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998). "For preclusive effect to flow from a prior judgment, the party against whom preclusive effect is asserted must have been either a party in the prior case or in privity with a party." Cruickshank v. MAPFRE U.S.A., 94 Mass. App. Ct. 662, 665 (2019).

Here, as in Corcoran I, the dispute centered around the northern parcels' right to use the southern portion of Pigeon Lane through the Woodland Park and DeVincent subdivisions. The plaintiffs here are in privity with the defendants in Corcoran I, and the defendants here are seeking to bind the plaintiffs to the earlier judgment. The defendants in Corcoran I claimed that the proposed subdivision development would not overburden Pigeon Lane, thus the overburdening determination was "essential to the merits of the underlying case" and "had a bearing on the

outcome." Mullins, 488 Mass. at 282, quoting Jarosz, 436 Mass. at 529, 533. Indeed, the Land Court judge in Corcoran I at 18-19, entered a judgment declaring that because the defendants had only limited rights in Pigeon Lane, "the proposed building of houses on 57 lots and use by their owners of the way would overburden Pigeon Lane."

Removing the barrier now would open the southern portion of Pigeon Lane to use by the seventy homes in the Pigeon Hill Estates subdivision. As the panel determined in Corcoran, 18 Mass. App. Ct. 1113, this change would overburden or overload the limited prescriptive easement; it would be a "mutation" from the prior seasonal camping use by the Boy Scouts, not a progression "within the scope of normal development." Glenn v. Poole, 12 Mass. App. Ct. 292, 295 (1981). See Lawless v. Trumbull, 343 Mass. 561, 564 (1962) (where prior use of way was relatively infrequent, a general right to vehicular travel would overburden easement). See also Parks v. Bishop, 120 Mass. 340, 341 (1876) (when "the condition and character of the dominant estate are substantially altered" -- such as when an undeveloped area for camping is divided into many residential lots -- "the right of way cannot be used for new purposes, required by the altered condition of the property, and imposing a greater burden upon the servient estate").

9

The plaintiffs maintain that they may relitigate the overburdening or overloading issue because of a material change in circumstances, namely the vehicular access over Forest Park Drive -- the later-created road that allowed for construction of, and access to, Pigeon Hills Estates.  See Barry v. Planning Board of Belchertown, 96 Mass. App. Ct. 314, 322 (2019) ("a previously adjudicated issue is not 'identical' for purposes of collateral estoppel[] where the facts material to the subsequent litigation have changed since the prior adjudication").  We are not persuaded.

The Land Court judge correctly concluded that a subsequent purchase of land that provides an alternative means of access is not a material change in circumstances.  Contrast Barry, 96 Mass App. Ct. at 322 (circumstances changed such that issue preclusion did not apply where plans approved after litigation changed land use).  In Corcoran I at 13, the judge determined that use of Pigeon Lane by the many landowners in the proposed subdivision would overburden the limited easement.  The addition of a second road in and out (Forest Park Drive) does not require revisiting this ruling and the judge properly applied collateral estoppel.[9]

_____

[9] Because we affirm the allowance for judgment on the pleadings, we do not address the plaintiffs' failure to add indispensable parties.

10

b. 1983 express easements. The plaintiffs also assert that the 1983 grants from the defendants' predecessors provide them an easement separate and apart from their easement rights recognized in Corcoran I and that because the grantors owned a portion of the fee in Pigeon Lane, they were entitled to grant those express easements..[10]  "[E]asements can be created only 'out of other land of the grantor, or reserved to the grantor out of the land granted[,] never out of the land of a stranger.'"  Kitras v. Town of Aquinnah, 64 Mass. App. Ct. 285, 292 (2005), quoting Richards v. Attleborough Branch R.R. Co., 153 Mass 120, 122 (1891).

There is no dispute that the defendants' predecessors granted the plaintiffs' predecessors a right to use Pigeon Lane in 1983, but the defendants' predecessors did not own the fee in the entire length of the way and could not grant a broad right to access the Pigeon Hill Estates subdivision via the southern portion of Pigeon Lane.  See Kitras, 64 Mass. App. Ct. at 292 ("whatever the intent, one may not grant what one does not own").  Though the grantors owned the portion of Pigeon Lane abutting their property, they had no authority to grant an easement over the rest of Pigeon Lane.  See Southwick v.

---

[10] "Every instrument passing title to real estate abutting a way, whether public or private . . . shall be construed to include any fee interest of the grantor in such way."  G. L. c. 183, § 58.

11

Planning Bd. of Plymouth, 65 Mass. App. Ct. 315, 319-320 (2005) (where town's easement rights over private subdivision ways derived from town's ownership of lot in that subdivision, town could not grant easement to another parcel because grant would overload easement). This bright-line rule is intended to avoid "difficult litigation over the question whether increased use unreasonably increases the burden on the servient estate" (quotation and citation omitted). Taylor v. Martha's Vineyard Land Bank Comm'n, 475 Mass. 682, 686 (2016). We need not determine the extent of the plaintiffs' rights in the small section of the way adjacent to the grantor's properties that the grantors did own because the Land Court judge correctly determined that use of these rights would overburden the rest of the way. See Boudreau v. Coleman, 29 Mass. App. Ct. 621, 634 (1990) (use of way by forty-one additional lots would overburden the right). We discern no error.[11]

c. Nuisance. The plaintiffs had a limited easement over Pigeon Lane and were aware that developing the property with fifty-seven homes would overburden it. They chose to create

_____

[11] The plaintiffs also assert that the Land Court erred by failing to balance the respective parties' rights rather than extinguish the plaintiffs' easement. The Land Court's ruling followed the earlier Corcoran rulings on the plaintiffs' ability to exercise their limited easement rights and we affirm on that ground. On this record, the plaintiffs have not proposed a low intensity use of the easement.

12

seventy homes and for over forty years did not object to the barriers blocking access to the southern portions of Pigeon Lane.  See Graziano v. Riley, 83 Mass. App. Ct. 280, 282-283 (2013) (where placement of berm across drainage easement was wholly incompatible with plaintiff's use of easement for more than twenty years, plaintiffs were barred from asserting any rights to use drainage easement).  We discern no error in the judge's decision to dismiss the plaintiff's nuisance claim.

Judgment affirmed.

By the Court (Vuono, Hershfang & Tan, JJ.[12]),

Paul Little

Clerk

Entered:  May 27, 2025.

---

[12] The panelists are listed in order of seniority.

13